THE STATE v. WILEY, *Appellant.*

DIVISION TWO.

1. **Constitution:** SEPARATE CRIMINAL COURT: COLLATERAL ATTACK. The constitutionality of a law, valid on its face, establishing a separate criminal court in a county will not be inquired into in a collateral proceeding.

2. ———: ———: ———. It will be presumed that the county had the requisite population to authorize the establishment of such court until the question is raised by the state in a direct proceeding.

3. **Jurors:** CHALLENGES. Jurors should be challenged if incompetent to serve.

*Appeal from Greene Criminal Court.*—HON. M. OLIVER, Judge.

AFFIRMED.

*Boyd & Delaney* and *Harrington & Havens* for appellant.

*John M. Wood,* Attorney General, for the State.

(1) The court did not err in overruling defendant's plea to the jurisdiction, and his motion in arrest. The presumption will be indulged that Greene county had

the necessary population. A law will not be declared to be unconstitutional unless it appears to be so beyond all reasonable doubt. But the constitutionality of a law cannot be inquired into in this way; it must be by a direct proceeding "so that the judgment of the court may operate, as it were, *in rem*, and have the direct effect of settling the question permanently, in such manner that it cannot afterward be made subject to judicial investigation." *State v. Rich*, 20 Mo. 393; *State v. Leonard*, 22 Mo. 449; *State v. York*, 22 Mo. 462; *Watts v. State*, 22 Tex. App. 572; *State v. Peyton*, 32 Mo. App. 528; *Kane v. McKown*, 63 Mo. 335; *Bauldin v. Ewart*, 55 Mo. 189.

GANTT, P. J.—The defendant was jointly indicted in the criminal court of Greene county at its July term, 1889, with William Haynie and H. M. Tutor, for grand larceny, the indictment charging that said parties on the eighteenth day of December, 1888, in said county, feloniously stole, took and carried away twenty-six head of fat hogs, black and white spotted, of the value of $300, the personal property of J. M. Williams and S. T. Whitlock. On the twentieth day of July he was arraigned, and refused to plead to said indictment, whereupon the court entered a plea of not guilty. On the sixteenth day of August, upon an application of the defendant, a severance was granted him. On the said day said defendant filed an affidavit alleging the incompetency of Joseph Dodson, sheriff of Greene county, to act in this case, on account of his personal prejudice against the defendant, and asked the court to appoint the coroner of Greene county, or some other person, to act as sheriff pending this trial. Whereupon the court ordered the said coroner to be called into court and required to perform the duties of sheriff during the pendency of said trial.

On the same day defendant, being arraigned on said indictment, pleaded not guilty. On the same day the defendant filed the following plea to the jurisdiction of said court:

" Now come defendants and for their plea say that this court should not proceed further herein, because said court has no jurisdiction herein; because the act of the general assembly creating this court is unconstitutional and void; because sections 1 and 31 of article 6 of the constitution of the state of Missouri is not self-enacting, and no proper legislative action has been taken making them operative; because section 54, article 4, is not self-enacting; because the notice recited in the act establishing this court was not published as required by law; because said section calls for legislative action prescribing the nature of the notice, and no such legislation has been enacted; because the last census taken under the authority of the state of Missouri shows that Greene county is a county having a population of less than fifty thousand; because the legislature has no authority to establish criminal courts, except in counties having over fifty thousand inhabitants, and no legislative enactment was passed to determine such population, except by the state census and by the decennial census of the United States; because the notice described in said act does not provide for or give notice that the bill will provide for a transfer of cases from the circuit court of said county to this court. Wherefore defendants pray that they be discharged," which the court overruled.

At the September term, 1889, the parties announced ready for trial. Eli Paxon, the coroner of said county, summoned a jury to try said cause; the defendant objected to said jury, and moved the court to quash the panel so summoned, and direct said coroner to summon a new jury, for the reason that the

sheriff of said county had summoned a regular panel of jurymen for that term, and the coroner, in summoning the jury to try the cause, had summoned some of those who were in the regular panel summoned by the sheriff. The court overruled this objection and motion. Defendant was tried at said term and found guilty as charged, and his punishment assessed at imprisonment in the penitentiary for two years. In due time he filed his motion for new trial, alleging as grounds the refusal to give instructions asked by defendant; and error in those given by the court; error in impaneling the jury; the want of jurisdiction in the court to try him, and newly discovered evidence.

This being overruled he filed his motion in arrest, challenging again the legality of the grand jury and the court that tried him.

By an act of the general assembly, approved April 26, 1889, a criminal court was established in Greene county. By his plea to the jurisdiction the defendant challenged the constitutionality of said act. By section 31, article 6, of the constitution of this state, the legislature is prohibited from establishing a criminal court in any county not having a population of over fifty thousand inhabitants.

That this court may declare an act of the legislature unconstitutional when it transcends the limits prescribed by the organic law, is now accepted by all branches of the government, but it is equally well determined that the invalidity of the statute must clearly appear, before the court will assume so serious a function. Ordinarily these questions arise from the face of the act itself, but here a comparison of the act of the legislature with the constitution will not disclose any conflict.

It is clear that if a county has a population of fifty thousand the legislature may establish a criminal court

for it.   The power to create the court depends upon a
fact *"in pais,"* something extraneous to the act.

It was the duty and the right of the legislature to
determine before passing the act, to inquire and ascer-
tain, that Greene county had the requisite number of
inhabitants.   A proper respect for a co-ordinate branch
of the government compels us to presume they did
make the proper investigation and found from the facts
that they were not infringing the  constitution.     The
court was accordingly established, and the practical
question now arises, must this court and its officers,
every time an indictment is found and a prisoner put
on trial, submit, as a preliminary question, to an inves-
tigation of the fact of the existence of fifty thousand
inhabitants in Greene county on April 26, 1889?

The question was answered by this court in *State v.
Rich,* 20 Mo. 393.   Judge LEONARD, speaking for the
court, said:   "It would, indeed, be impracticable to
act upon any such principle.   If, whenever any act
done under the authority of the law come in question
collaterally, the constitutionality of the law could be con-
tested, then the trial of the main issue must necessarily
be delayed until the preliminary fact, upon which the
validity of the contested legislative act depended,
should be first tried and determined upon testimony,
which being different in different cases might involve
the absurdity of deciding the law constitutional one
day, and unconstitutional the next.   But we need not
press these things farther—the result is manifest; all
such inquiries must be excluded whenever they come
up collaterally, and the county, *its courts and officers*
must be treated as things existing in fact, the lawful-
ness of which cannot be questioned unless in a direct
proceeding for that purpose.   *   *  *   So that the
judgment of the court may operate, as it were, *in rem,*
and have the direct effect of settling the question per-

manently, in such manner that it cannot afterwards be made the subject of judicial investigation."

So we think it was clearly competent for the legislature to make its own inquiries as to the population of Greene county when it enacted the law creating this court, and, until the state in some appropriate direct proceeding shall question the constitutionality of said act, it will be assumed that said county had the requisite population, and no such inquiry will be permitted in these collateral proceedings. *State v. Daniels*, 66 Mo. 192; *State ex rel. v. Boone Co. Ct.*, 50 Mo. 317.

No error was committed in overruling the plea to the jurisdiction. Defendant has not filed any brief, and we have been compelled to examine the records for ourselves. We find that, upon objection to the sheriff, the court ordered the coroner to take the oath and summon a jury for the trial. In a general way, and principally by inference it would seem that a regular panel was in attendance, in the court, and after the coroner qualified he summoned some of these jurors. No suggestion is made that any juror he summoned was unfit or incompetent. The sole objection is that they had already been summoned by the sheriff on the regular panel. It was the coroner's duty to summon good and lawful men. If they were unfit they should have been challenged. There is nothing in the objection, and it was properly overruled.

The court gave elaborate instructions on reasonable doubt and circumstantial evidence. The court also gave an instruction as to the presumption arising from recent possession of stolen property, but was careful to caution as to the effect of such evidence. Indeed, the instructions could not have been more liberal to the defendant, with due regard for the law.

As to the admission of evidence we find no error. The evidence tended strongly to show that defendant

assisted Tutor to drive the hogs to town; introduced him under his assumed name, and enabled him to cash the check given for the hogs. Nor do we think the court erred in refusing to grant a new trial on account of the newly discovered evidence. That of Miss Gay was in no sense unknown to defendant as his affidavit clearly shows, and that of Brumley would only have shown that Haynie, his codefendant, was also a *particeps criminis*, but would not have rebutted the evidence tending to show defendant's complicity in the crime. The jury had the evidence before them, under correct declarations of law, and we see no reason for disturbing their finding. The judgment is affirmed. All of this division concur.