WILLIAM K. KAVANAUGH et. al., Constituting the Missouri Waterways Commission. v. JOHN P. GORDON, State Auditor.

In Banc, July 2, 1912.

1. **LEGISLATIVE APPROPRIATION: To Waterways Commission: To Named Agent: Right of Commission to Maintain Injunction: Demurrer: Agreement in Result, But Not as to Reasons.** Section 63 of the General Appropriations Act of

1911 read: "There is hereby appropriated out of any money in the State Treasury not otherwise appropriated, chargeable to the State Revenue Fund, the sum of seventeen thousand dollars to the Missouri Waterways Commission. Of this sum seven thousand dollars must be used and is to pay the salary, traveling, hotel, clerical, stenographic and other necessary expenses of John H. Nolen as special agent of the State and the commission and expert in the work of said commission, five thousand dollars of same to be used to pay the salary of said John H. Nolen, and to be paid in monthly installments, and two thousand dollars of said sum to be used to pay traveling, hotel, clerical, stenographic and other necessary expenses of said John H. Nolen, the same to be paid on vouchers issued by John H. Nolen and approved by the State Auditor." The five men "constituting the Missouri Waterways Commission" brought suit in the circuit court to enjoin the State Auditor from approving or auditing or allowing the vouchers issued by the said Nolen on account of salary or expenses, alleging the said section of the act to be invalid on various grounds. To the petition, the Auditor demurred on four grounds. The circuit court sustained the demurrer, and the plaintiffs appealed. A majority of the judges hold that the demurrer was properly ruled, but they do not concur in the reason for so holding, and there is no majority opinion on every point. The main opinion was written by LAMM, J., holding that the commissioners have a legal right to maintain the suit and that the said section in so far as it relates to Nolen is unconstitutional, on two grounds, and that the judgment should be reversed and the cause remanded for further procedure, and in that opinion BROWN, J., concurs. WOODSON, J., dissents generally. The main dissenting opinion is written by GRAVES, J., holding that the commissioners have no legal capacity to maintain the particular suit, that they do not sue as taxpayers, that as a commission they have no interest in the $7,000 attempted to be appropriated to Nolen, and that the demurrer was properly ruled. Another dissenting opinion is written by VALLIANT, C. J., in which KENNISH and FERRISS, JJ., concur, holding that the demurrer was properly ruled because the Waterways Commission has no interest in the $7000 appropriated to Nolen, and that the appropriation to Nolen was unconstitutional.

2. ————: **Legal Right of Waterways Commission to Sue: Similarity to Partnership or Voluntary Association.** *Held,* by LAMM, J., with whom BROWN, J., concurs, that, while there is no such corporate body as the Missouri Waterways Commission, yet the statute made it an aggregation of five individuals appointed by the Governor and gave it prescribed composite official duties, and their relations to each other and to

their public function, made by statute instead of by contract, may be likened to a partnership or a voluntary association, which, not being a legal entity that can sue or be impleaded as such, may sue in the names of the individual members of the association, describing themselves by their association name, as was done in the petition.

3. ———: ———: **As Taxpaying Citiens.** *Held*, by LAMM, J., with whom BROWN, J., concurs, that, under the constitutional provision declaring that courts of justice shall be open to every person for the administration of right and justice, and to afford certain remedy for every injury to person, property or character, the members of the Waterways Commission, as taxpaying citiens, may be heard by injunction to prevent the consummation of illegal schemes putting a burden of debt or taxes upon the public, or to stop an illegal and wrongful expenditure of public money by public officials in charge thereof.

4. ———: ———: **As Public Officers.** *Held*, by LAMM, J., with whom BROWN, J., concurs, that every public officer, although not expressly so authorized by statute, has implied authority to bring and maintain any suit which may be necessary for the proper discharge of his official duty; and as the Waterways Commission is charged with public duty and responsibility in expending the money appropriated by the Legislature to the commission for governmental purposes, they have a right to maintain a suit to enjoin the payment of money to an individual who has no official status and to whom the Legislature directed a part of the money appropriated to the commission should be paid as an expert and agent of the commission and of the State, named as such by the act of appropriation itself.

5. ———: **Right to Office: Tested by Injunction.** *Held*, by LAMM, J., with whom BROWN, J., concurs, that the right of an incumbent to an office cannot be determined by an injunction, nor can an officer be ousted by such a suit; but before there can be an officer there must be an office, and there is no law creating the office of "special agent of the State and the commission and expert in the work of said Waterways Commission," and a section of the General Appropriations Act, appropriating $17,000 to said commission and declaring that $7000 of that sum must be paid to a certain named individual as such "special agent and expert" upon his voucher, did not create an office. It prescribed no duties pertaining to an office or for the person mentioned, it fixed no tenure even by implication, it hinted at no source of official life, it did not require him to take an oath, give a bond, do anything or report to anybody at any time, and suggests no power to unmake him.

6. ————: Injunction Against Auditor: To Prevent Illegal Issue of Warrant: Necessary Parties. *Held*, by LAMM, J., with whom BROWN, J., concurs, that, to a suit against the State Auditor, by the Waterways Commission, to enjoin him from issuing a warrant, against the moneys appropriated to the commission, to a person named in the act as a special agent and expert of the commission and to whom by name the act appropriates a given sum, such special agent is not a necessary party defendant. He has no vested interest in the money collected from taxpayers and held in the State Treasury for govermental purposes; nor can he be ousted from office under such a bill, for its force is spent elsewhere; and his title, if any, to an office, is only involved as a mere incident to the suit which is aimed at stopping an alleged leak in the treasury through the alleged wrongful interpretation put by the Auditor upon the legislative appropriation.

7. ————: Gift to an Individual. *Held*, by LAMM, J., with whom VALLIANT, C. J., WOODSON, FERRISS and KENNISH, JJ., concur, that an appropriation in the General Appropriations Act of $7000 of the $17,000 appropriated to the Waterways Commission "to pay the salary . . . and . . . necessary expenses of John H. Nolen, as special agent of the State and the commission and expert in the work of said commission . . . . the same to be paid upon vouchers issued by said John H. Nolen and approved by the State Auditor," there being no office created by that or any other act, and the appropriation not being made to pay for past services, amounted to an out-and-out gift to him as an individual, and was in violation of section 46 of article 4 of the Constitution, denying to the General Assembly power to make or authorize the making of "any grant of public money or thing of value to any individual," etc.

8. ————: ————: Special Legislation. *Held*, also by LAMM, J., et al., that said appropriation of $7000 to Nolen was special legislation of an undisguised and typical kind, granting a special and exclusive right or privilege to an individual, in violation of paragraph 26 of section 23 of article 4 of the Constitution, prohibiting special or local laws "granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

9. ————: Right of Waterways Commission to Sue. *Held*, by GRAVES, J., that the members of the Waterways Commission have no right to maintain a suit to enjoin the State Auditor from issuing warrants to pay Nolen the $7000 appropriated by said section 63 of the General Appropriations. Act.

10. ————: ————: No Interest in Case. *Held*, by GRAVES, J., with whom VALLIANT, C. J., and FERRISS and KENNISH,

JJ., concur, that the Waterways Commission, as a commission, has no interest in the $7000 which said section 63 of the General Appropriations Act directs to be paid to Nolen, as the special agent of the State and commission and as expert in the work of said commission, and even though ' that appropriation be illegal and void as to him the commission could not use it or any part of it for any purpose; if void, it was void from the beginning and that sum has not been appropriated to any one. The commission, therefore, as a legal body has no such financial interest in that $7000 as authorizes its members to maintain a suit to enjoin its payment to Nolen. Even if they have a right to sue for things in which, as a commission they have an interest, they do not have a right to sue for things in which they have no personal interest; and by pleading the statute, they show they have no interest in the $7000 whose payment to Nolen they seek to enjoin.

11. ⸺: ⸺: As Taxpaying Citizens: Changing Position on Appeal. *Held*, by GRAVES, J., that the plaintiffs, constituting the Missouri Waterways Commission, did not sue as taxpaying citizens, as is indubitably shown by an examination of their petition, but to conserve for their own use the whole $17,000 appropriated by said section 63, and to compel the use of the entire fund by them; and that their right to sue as taxpayers, not being before the trial court, but being an afterthought on appeal, they should not now be permitted to reverse their position; and not having asserted by their petition that they sue as taxpayers, and their petition clearly showing that they sue in no such capacity, their right to sue as taxpayers is not before the court, and no ruling on the point is authorized.

Appeal, from Cole Circuit Court.—*Hon. J. M. Williams*, Judge. ·

Affirmed.

*Lon O. Hocker* and *W. M. Williams* for appellants.

(1) The part of Sec. 63 of the appropriation bill directing the payment of $7000 for the salary and expenses of John H. Nolen "as special agent of the State and the commission and expert in the work of

said commission'' is violative of the Constitution, null and void. Sec. 63, p. 18, Laws 1911; Par. 15, Sec. 53, Art. 4, Constitution 1875; Par. 26, Sec. 53, Art. 4, Constitution 1875; Sec. 46, Art. 4, Constitution 1875; Sec. 28, Art. 4, Constitution 1875; Art. 3, Constitution 1875; Sec. 46, Art. 4, Constitution 1875; Pars. 15 and 26, Sec. 53, Art. 4, Constitution 1875; State ex rel. v. St. Louis, 216 Mo. 94; State ex inf. v. Washburn, 167 Mo. 393; State ex rel. v. Gordon, 236 Mo. 142; State ex rel. v. Herrman, 75 Mo. 353. (2) There is first directly appropriated by the Act of 1911 the sum of seventeen thousand dollars to the Missouri Waterway Commission. This appropriation is complete in itself and may stand notwithstanding the subsequent provision is stricken out as invalid and unconstitutional. State ex rel. v. Taylor, 224 Mo. 474; State ex rel. v. Field, 119 Mo. 593. (3) The plaintiffs' petition does not seek to remove Nolen from office, or to interfere in anywise with any official function or duties that he may be performing. The sole purpose of the bill is to prevent the use for other purposes of money appropriated for the Waterway Commission. The degree, under the petition, can only go to that extent and no further. An injunction is the only remedy that will give that relief, and, while the decree cannot oust an incumbent from an office, it does not follow that equity can grant no relief against the misapplication of public funds because the right to an office may incidentally arise. Johnston v. Jones, 23 N. J. Eq. 216; Huntington v. Cast, 48 N. E. 1025. (4) There is no such office created by law as "special agent of the State and the commission and expert in the work of said commission," and where there is no *de jure* office there can be no *de facto* officer under the rule in this State. Ex parte Snyder, 64 Mo. 62; State ex rel. v. Nast, 209 Mo. 723. (5) Plaintiffs constitute "The Missouri Waterway Commission," which is

charged with the duty and responsibility of properly expending, for the benefit of the people of the State, the seventeen thousand dollars appropriated for that purpose. It is incumbent upon the members of this commission to see to it that the money committed to their charge by the General Assembly is used for the legitimate purposes for which it was set apart and appropriated. "A public office is a public trust" and as trustees of this fund the plaintiffs are responsible to the people of the State for its use, and have such an interest in their official capacity as authorizes them to invoke equitable aid for its protection. Throop on Public Officers, Sec. 544; Bank v. Houser, 42 N. E. (Ind.) 753; Auditor v. Railroad, 46 N. W. (Mich.) 730; Todd v. Birdsall, 1 Cowen, 257; Supervisors v. Stimson, 4 Hill, 137; State ex rel. v. Court, 107 Mo. 291; State ex rel. v. Fidelity Co., 236 Mo. 364. (6) Plaintiffs as taxpaying citizens of the State have the right to maintain this action. Cooley on Taxation (2 Ed.), 767; 2 Joyce on Injunctions, 1382; Crampton v. Zabriskie, 101 U. S. 601; Winn v. Shaw, 25 Pac. (Cal.), 969; Adams v. Brenan, 42 L. R. A. (Ill.) 721; Savidge v. Village, 70 N. W. (Mich.) 426. (7) A State officer is not exempt from suits to restrain the improper application of public funds. A suit against a State officer in such instances is not a suit against the State. Exchange v. Knott, 212 Mo. 647. (8) Nolen was not a necesary party. No relief is sought against him. Plaintiffs do not seek to deprive him of any office, or to prevent him from exercising any official function that he may claim. He has no power to draw warrants upon the State Treasurer, which is the only thing sought to be enjoined in this proceeding. The defendant, as State Auditor, is the only person who has the power to do that which plaintiffs seek to prevent. Black v. Cornell, 30 Mo. App. 641; Black v. Ross, 37 Mo. App. 250.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for respondent; *T. S. Mosby* of counsel.

(1) Equity is without jurisdiction to test the right of Nolen to the office which he holds by legislative appointment. The court cannot try Nolen's right to his salary without trying his title to his office, the right of a public officer to the compensation of his office being incidental to and dependent upon his title to the office. The legality of an appointment or election to any office can be tested only by *quo warranto* or other adequate and specific legal remedy, and where such remedy is provided injunction will not lie. The right of a person claiming an office by color of title and exercising it *de facto* cannot be collaterally attacked. State ex rel. v. Gordon, 236 Mo. 165; State ex rel. v. Johns, 81 Mo. 13; State ex rel. v. Aloe, 152 Mo. 478; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48; White v. Berry, 171 U. S. 377; Greene v. Knox, 175 N. Y. 432; People ex rel. v. Comrs., 174 N. Y. 450; Dayton v. Carter, 206 Pa. St. 491; Brower v. Kantner, 190 Pa. St. 182; Lavin v. Comrs., 245 Ill. 505; People v. Lieb, 85 Ill. 484; Grove Dist. v. Myles, 109 Ia. 541; State v. Alexander, 107 Ia. 177; Corcoran v. Pittston, 11 Kulp (Pa.), 81; Hullman v. Honcomp, 5 Oh. St. 242; Updegraf v. Crans, 47 Pa. St. 103; Hinckley v. Breen, 55 Conn. 119; Butler v. Ellerbe, 44 S. C. 256; Cornish v. Young, 1 Ashm. (Pa.) 153; Hagner v. Heyberger, 7 W. & S. (Pa.) 104; Campbell v. Comm., 96 Pa. St. 344; Bean v. Thompson, 19 N. H. 290; Morse v. Calley, 5 N. H. 223; Plymouth v. Painter, 17 Conn. 585; Douglas v. Wickwire, 19 Conn. 492; Coolidge v. Brigham, 1 Allen (Miss.), 336; Fowler v. Bebee, 9 Mass. 231; Aulanier v. Governor, 1 Tex. 653; Crosier v. Cornell, 27 Hun (N. Y.), 215; Snyder v. Schram, 59 How. Pr. (N. Y.) 404; Golden v. Bressler, 105 Ill. 419; Peo-

ple v. Weber, 86 Ill. 283; Desmond v. McCarthy, 17 Ia. 525; Leach v. Cassidy, 23 Ind. 449; State v. Pertsdorf, 33 La. Ann. 1411; Ex parte Parks, 3 Mont. 426; 22 Cyc. 775; High, Extr. Leg. Rem. (3 Ed.), Secs. 49, 619; Pomeroy, Eq. Jur., Sec. 336; High, Injunctions (4 Ed.), Sec. 1312; In re Sawyer, 124 U. S. 200; 5 Am. and Eng. Ency. Law, p. 106. (2) Plaintiffs have no such interest as will entitle them to injunctive relief and are without legal capacity to sue. It appearing on the face of plaintiff's petition that the $7000 could not be used by them as such commissioners, and they having neither alleged nor shown any other special interest or prospective injury from the payment of this money to Nolen for the work in which he is now engaged; and it appearing upon the face of the bill that plaintiffs have no right to sue as individual taxpayers, nor as the Missouri Waterway Commission, nor as the trustee of an express trust, and it fully appearing upon the face of the bill that they have no interest, either remedial or beneficial, they can have no legal capacity to sue. Commonwealth v. Barnett, 199 Pa. St. 161; Denz v. Kremer, 142 Wis. 1; Acheson v. Railroad, 140 S. W. (Tex.) 467; Sanderson v. Cerro Gordo, 80 Iowa 89; Western v. Dalton, 122 Ga. 774; Rutherstrom v. Peterson, 72 Kan. 679; Amusement Co. v. Topeka, 68 Kan. 802; Packard v. Jefferson Co., 2 Colo. 338; Grant v. Cook, 7 D. C. 165; Sidener v. Haw Creek Co., 91 Ind. 186; Craft v. Comr's, 5 Kan. 518; Pierce v. Smith, 48 Kan. 331; Delaware Co. v. Stump, 29 Am. Dec. 561; Allen v. Board, 13 N. J. L. 68; Smith v. Lockwood, 13 Barb. 209; Doolittle v. Broome Co., 18 N. Y. 155; Manhattan Co. v. Barker, 36 How. Pr. 233; Atlanta Co. v. Bank, 75 Ga. 40; Voisin v. Leche, 23 La. Ann. 25; Normond v. Otoe Co., 8 Neb. 18; Cady v. Cogner, 19 N. Y. 256; 22 Cyc. 910, 760, 761; 30 Cyc. 21; High, Injunct., Sec. 1560; Joyce, Injunct., Secs. 345, 361, 361a; Pomeroy, Equity Jur., Sec. 327; Kerr on Injunct., p. 22; Pom., Eq. Rem., Sec. 326.

(3)   Plaintiffs have a specific remedy at law by means of *quo warranto*. That remedy being complete and adequate in all respects, it ousts the equitable jurisdiction of the case. Sec. 2631, R. S. 1909; McCarty v. McKinney, 77 S. E. (Ga.) 394; Commissioners v. Griffin, 134 Ill. 330; Hinze v. People, 92 Ill. 406; Updegraf v. Crans, 47 Pa. St. 103; Davis v. Council, 90 Ga. 817; Gilmore v. Wells, 78 Ga. 197; Bronk v. Riley, 105 Hun, 489; Lockwood v. Lawrence, 77 Me. 297; Spelling, Extra. Rel., Secs. 16 and 694.   (4)   John H. Nolen is the *de facto* incumbent of a public office, and equity will not intervene to determine the legality of his commission. Sec. 63, p. 18, Laws 1911, appropriating $7000 for salary and expenses of said Nolen "as special agent of the State and the commission and expert in the work of said commission," created a public office. The appropriation was for a necessary public purpose, within the meaning of the seventh clause of Sec. 43, Art. 4, Missouri Constitution. The duties of the office are made sufficiently clear by the language of Sec. 63, supra, and by the statute creating the waterway commission (Laws 1909, p. 902, Sec. 2.) The duration of the office is fixed by both the statutory limitation upon the life of the waterway commission and the constitutional limitation upon the appropriation itself. The compensation is clearly specified. The office is created by legislative act, and that act is presumptively valid. Nolen is in possession of the office, exercising its functions under color of title and with the acquiescence of the public. His title cannot be impeached in this collateral proceeding against the State Auditor, and for this reason alone the petition is incurably defective for failure to state a cause of action. Throop, Public Officers, Ch. 1; Mechem, Public Offices and Officers, Sec. 1; State ex rel. v. Johnson, 123 Mo. 43; State ex rel. v. Shannon, 133 Mo. 139; State ex rel. v. Valle, 41 Mo. 30; United States v. Maurice, 2 Brock. (U. S.) 96; Clark v. Stanley, 66 N. C. 59; Throop v.

Langden, 40 Mich. 673; In re Oaths, 20 Johns. (N. Y.) 492; Rowland v. Mayer, 83 N. Y. 376; U. S. v. Hartwell, 6 Wall. (U. S.) 385; State v. Spalding, 102 Iowa, 639; Hill v. Boyland, 40 Miss. 625; Eliason v. Coleman, 86 N. C. 241; Vaughn v. English, 8 Cal. 41; In re Hathaway, 71 N. Y. 238; Smith v. City, 37 N. Y. 238; State v. Wilson, 29 Ohio St. 348; Smith v. Moore, 90 Ind. 294; Comrs. v. Goldsborough, 90 Md. 193; State v. Griswold, 73 Conn. 95; Steward v. County, 61 N. J. L. 117; 29 Cyc. 1391; State v. Carroll, 38 Conn. 449; Samuels v. Comrs., 125 Ill. 536; Leach v. People, 122 Ill. 420; People v. Bangs, 24 Ill. 184; Watson v. McGrath, 111 La. 1097; Ex parte Strang, 21 Ohio St. 610; Chicago v. Langlade Co., 56 Wis. 614; In re Ah Lee, 5 Fed. 899; Parker v. Baker, 8 Paige, 428; Mallet v. Uncle Sam Co., 1 Nev. 188; Taylor v. Skrine, 2 Brevard, 520; People v. White, 24 Wend. 520; People v. Kane, 23 Wend. 414; Carlton v. People, 10 Mich. 250; Adams v. Lindell, 72 Mo. 198; Cocke v. Halsey, 16 Peters, 71; Commonwealth v. McCombs, 56 Pa. St. 129; Clark v. Commonwealth, 27 Pa. St. 129; Usher v. Tel. Co., 122 Mo. App. 98; Biencourt v. Parker, 27 Tex. 558; Williams v. Clayton, 6 Utah, 86; State ex rel. v. Beloit, 21 Wis. 282; Schenck v. Peay, 1 Dill, 267; State v. Douglas, 50 Mo. 593; Harbaugh v. Winsor, 30 Mo. 327; Powers v. Braley, 41 Mo. App. 556; State v. Cartwright, 122 Mo. App. 257; Buck v. Hawley, 129 Ia. 406; Olsen v. Trego Co., 8 Kan. App. 414; Woods v. Bristol, 84 Me. 358; Hugg v. Ivins, 59 N. J. L. 39; People v. Dike, 75 N. Y. Supp. 801; State v. Taylor, 108 N. C. 196; Brumby v. Boyd, 28 Tex. Civ. App. 164; Kempster v. Milwaukee, 97 Wis. 343; Atty.-Gen. v. Parsell, 99 Mich. 381; Vicksburg v. Lombard, 51 Miss. 111; Haskell v. Futton, 65 Neb. 274; Dugan v. Farrier, 48 N. J. L. 613; People v. Roberts, 6 Cal. 214; Ray v. Murdock, 36 Miss. 692; Mallett v. Uncle

Sam Co., 1 Nev. 188; McLean v. State, 8 Heisk.
(Tenn.) 22; Waller v. Perkins, 52 Ga. 233; Atty.-Gen.
v. Magin, 63 N. H. 378. (5) John H. Nolen being di-
rectly and materially interested in the subject-mat-
ter of the suit, and claiming an interest adverse to
plaintiffs, he is therefore a proper and necessary party
defendant. It affirmatively appears on the face of
the bill that Nolen has a right and interest in the
subject-matter adverse to the interests of plaintiffs
and wholly different and distinct from the claims of
plaintiffs or others, and that such interest would be
destroyed by plaintiffs' success in this suit. In these
circumstances equity will not and in good conscience
cannot adjudicate the rights of Nolen without giving
him an opportunity to be heard. The failure to join
him as a party defendant was fatal to the bill, and the
question was properly raised by demurrer. Bliss,
Code Pl. (2 Ed.), Secs. 96, 97; Story, Eq. Pl., Secs.
76a and 76b; Mitford and Tyl. Pl. and Pr. in Eq. (5
Ed.), p. 34; 1 Daniel's Ch. Pl. and Prac. (Perkins Ed.),
p. 45; Benson v. Albany (N. Y.), 24 Barb. 248, 249,
250, 253, 261, 273; 1 Barb. Chan. Prac. (2 Ed.), p. 40;
6 Am. and Eng. Ency. Law, 732; Pomeroy, Rem. and
Rem. Rights, Secs. 331, 332; Haly v. Bagby, 37 Mo.
363; Siemers v. Kleeburg, 56 Mo. 196; Dunklin Co.
v. Clark, 51 Mo. 60; Hoppock v. Chambers, 96 Mich.
509; Graham v. City, 40 Minn. 436; Thickson v. Barry,
138 Ill. App. 100; Modoc Co. v. Spencer, 103 Cal. 498;
State v. Anderson, 5 Kan. 90; City v. State, 49 Kan.
246; Butcher v. Camden, 29 N. J. Eq. 478; King v.
Comrs., 10 Tex. Civ. App. 114; Bingham v. Camden,
29 N. J. Eq. 464; Townsend v. Anger, 3 Conn. 354;
Herrington v. Hubbard, 1 Scam. (Ill.) 569; Smith v.
Rotan, 44 Ill. 506; Bank v. Freeze, 26 N. J. Eq. 453;
Bank v. Lee, 11 Conn. 112; Smith v. Rogers, 1 Stew.
and P. (Ala.) 317; Story's Eq. Pleading (9 Ed.), Sec.
137; State ex rel. v. Huff, 105 Mo. App. 354; Williams
v. Bankhead, 17 Wall. 563; Sec. 1732, R. S. 1909.

PER CURIAM.—The majority of the court do not agree to the principal opinion and they state their different views in dissenting opinions filed, except Woodson, J., who dissents generally; thus it appears that a majority of the court hold that the judgment of the trial court sustaining the demurrer to the plaintiffs' petition was right, although they do not all concur in a reason for so holding.

The judgment of the trial court is therefore affirmed.

LAMM, J.—Cast on demurrer in the Cole Circuit Court, plaintiffs stood on their bill in equity, refused to plead over, suffered judgment and appealed. (A temporary injunction theretofore issued was continued in force pending appeal.)

Suing both as members of the Missouri Waterways Commission and as taxpaying citizens of the State of Missouri, plaintiffs seek to enjoin defendant, the State Auditor, from auditing the accounts and drawing warrants on the State Treasurer in favor of one John H. Nolen. Agreeably to that end their bill alleges that the Forty-Sixth General Assembly appropriated $17,000 to the Missouri Waterways Commission (plaintiffs being that commission), and that said sum is available for the purposes of the commission, on vouchers and warrants audited and drawn in accordance to law; that the General Assembly, in violation of law, undertook to limit the use of $7000 of said appropriation in gross to the salary, traveling, hotel, clerical, stenographic and other necessary expenses of one Nolen, describing him "as special agent of the State and the Missouri Waterways Commission and expert in the work of said commission"—$5000 to his salary in monthly installments, and $2000 to pay expenses above specified—all to be paid on vouchers issued by Nolen and approved by the auditor; that said part of said appropriation bill, so attempting to limit $7000 of the

$17,000 appropriated to the commission, to the salary and expenses of Nolen, is unconstitutional, void and without authority of law.

The bill then proceeds to set out the particulars in which that part of the act is said to be void, as follows:

*First.* In that by Par. 15 of Sec. 53 of Art. 4 of the Constitution, the Legislature is prohibited from passing any local or special law creating an office, and by a subsequent paragraph (26 of the same section) it is prohibited from granting to any individual a special or exclusive right, privilege or immunity, and by Sec. 46 of the same article it is prohibited from granting or authorizing the granting of any public money or thing of value to any individual. That inasmuch as the Legislature may not by a special act create an office, the appropriation in question is one of money to an individual for a private purpose and is an illegal donation of the public revenue to such private individual. That the grant is without conditions, for no duties are prescribed or attempted to be prescribed to be performed on the part of Nolen as special agent for the State or otherwise.

*Second.* Plaintiffs plead the provisions of Sec. 28 of Art. 4 of the Constitution ordaining that a bill shall not contain more than one subject which shall be clearly expressed in its title, excepting from such provision general appropriation bills and bills under the third subdivision of Sec. 44 of said article. It is next averred that there was nothing in the title of the appropriation bill referring to the appointment of Nolen to the office therein referred to, "if there be such office," and that the subject of his appointment is not germane to the title of the appropriation bill or to the subject-matter of said bill or to any part thereof.

*Third.* It is next averred that the part of the appropriation bill struck at is a legislative attempt to create an office in violation of referred-to constitu-

tional provisions, and is a legislative attempt to exceed the powers of the legislative department, in that the Legislature undertook to appoint a particular person to an office, in violation of Art. 3 of the Constitution and in violation of the prerogative of the executive department.

*Fourth.* It is next averred that the questioned part of said appropriation bill is void, because special legislation, in that it singled out Nolen from all other persons eligible to hold the office or place therein provided for, in violation of the foregoing paragraphs of Sec. 53 and Sec. 46 of Art. 4 of the Constitution.

Averring further that it is the duty of the Waterways Commission to conserve the funds appropriated to the commission, in order that the greatest benefit to the State of Missouri and its citizens be attained; that to that end the commission had requested defendant, as State Auditor, not to audit and approve the vouchers issued by said Nolen for salary and expenses, and that they put their request on the said grounds of the unconstitutionality and illegality of that part of the appropriation bill, but defendant refused the request of plaintiffs, and had in despite thereof approved the vouchers of Nolen, which had been paid up to this time by the State Treasurer. Averring further that defendant, as Auditor, will continue that course and has so advised plaintiffs, they, being otherwise remediless, pray an injunction against said Gordon to restrain him from approving or auditing or allowing Nolen's vouchers on account of salary or expenses and from drawing any warrants on the State Treasurer in payment thereof, etc.

The demurrer was put on the following grounds:

"*First.* The court has no jurisdiction upon facts alleged in the petition to entertain a bill for injunctive relief.

"*Second.* The plaintiffs have not legal capacity

to sue as such Waterways Commission, or as members of such commission, or as individual taxpayers.

"*Third.* The petition does not state facts sufficient to constitute a cause of action.

"*Fourth.* That there is a defect of parties defendant, in this, to-wit: that it appears upon the face of the petition that John H. Nolen is a proper and necessary party in interest, and should be made a party defendant herein."

The cause was advanced because public interests were involved and submitted on briefs, In Banc, at our April Term.

The Forty-fifth General Assembly (Laws 1909, p. 902), in an act of four sections, authorized the Governor to appoint a commission designated the "Missouri Waterways Commission" to be composed of five persons "of high practical business qualifications," three of them residing in counties contiguous to a navigable river—the duties of the commission being defined as follows: ". . . to investigate the various problems associated with the navigable waterways of the State and the reclamation of the lands subject to overflow or inundation; the construction of practical and substantial levees; the ascertaining of lands now subject to inundation of rivers; the increase from benefits to be derived from these proposed developed navigable waterways, and reclamation of lands subject to overflow or inundation, and such other statistics and data as will intelligently enable the General Assembly to properly formulate and devise means and ways whereby legislative enactment may be had to carry out and put into effect the benefits to be derived by the creation of the navigable waterways, *et cetera.* The results of these investigations and studies, together with all obtainable statistics, to be embodied in a report of all its workings to the General Assembly."

It is provided that members of the commission shall serve without pay, but are allowed their neces-

sary and legitimate expenses incurred in the discharge of official business and duties. The "official term and expenses" of the commission close in four years from date of appointment. Five thousand dollars, or such part thereof as necessary, were appropriated for expenses, and the Auditor was directed to draw warrants up to the amount of the appropriation upon presentation of "the proper vouchers, certified by said commission and approved by the Governor," to be paid by the Treasurer out of the sum appropriated.

Two years later the Forty-sixth General Assembly, by its appropriation act for the contingent and incidental expenses of the State government, and the payment of contingent and incidental expenses of the State departments, public printing and certain other demands against the State, for which no appropriation had heretofore been made for the biennial period of 1911 and 1912, etc., with an emergency clause, passed an appropriation act in 86 sections (one of them, Sec. 84, having many subsections). [Laws 1911, p. 2, *et seq.*] Sec. 63 reads:

"There is hereby appropriated out of any money in the State Treasury not otherwise appropriated, chargeable to the State Revenue Fund, the sum of seventeen thousand dollars ($17,000) to the Missouri Waterways Commission. Of said sum seven thousand dollars ($7000) must be used and is to pay the salary, traveling, hotel, clerical, stenographic and other necessary expenses of John H. Nolen as special agent of the State and the commission and expert in the work of said commission, five thousand dollars ($5000) of same to be used to pay the salary of said John H. Nolen and to be paid in monthly installments, and two thousand dollars ($2000) of said sum to be used to pay traveling, hotel, clerical, stenographic and other necessary expenses of the said John H. Nolen, the same to be paid upon vouchers issued by John H. Nolen and approved by the State Auditor."

(*Note*: The part of said section commencing with the words, "Of said sum," is the provision challenged in this suit.)

The constitutional provisions held in judgment are:

Par. 15, Sec. 53, Art. 4, prohibiting the General Assembly from passing any local or special law "creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts."

Par. 26, Sec. 53, *Ibid.*, prohibiting special or local laws "granting to any corporation, association or individual any special or exclusive right, privilege or immunity. . . ."

Sec. 46, Art. 4, *Ibid.*, denying to the General Assembly the power to make or to authorize the making of "any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever: *Provided*, that this shall not be so construed as to prevent the grant of aid in a case of public calamity."

Sec. 28, Art. 4,*Ibid.*, requiring a bill to contain no more than one subject which shall be clearly expressed in its title, with certain exceptions relating to general appropriation bills and bills passed under the third subdivision of Sec. 44 of Art. 4.

(*Note*: Said third subdivision refers to contracting debts on any unforeseen emergency or casual deficiency of the revenue.)

Art. 3 of the Constitution, reading: "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of power properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the

instances in this Constitution expressly directed or permitted.''

I. It is argued the demurrer lies, because plaintiffs have no legal capacity to sue, either as individual taxpayers or as members of the Missouri Waterways Commission. If that be so, the case dies *in limine,* and other questions may be reserved. Attending to that view of it, it may be conceded, at the outset, that there is no such body corporate as the ''Missouri Waterways Commission'' known to the law, and that the commission as such is not a juristic person or entity that can sue or be sued. The statute instead of making it a body corporate, made it an aggregation of five individuals appointed by the Governor because of their high practical business qualifications, and gave it prescribed composite official duties, much like a committee, who serve *pro bono publico* and without pay, having a composite or aggregate well-sounding official title for convenience of designation. As near as it can be described, it is in the nature of a voluntary association, made such by statute instead of by contract. We see no good reason why those five gentlemen, in a matter pertaining to their official duties, should be denied access to the courts. We perceive no mischief to the State or to jurisprudence flowing from permitting them to sue either as an aggregation of officers, having a common right, or as an aggregation of individuals, in similar fix, provided they have a just complaint with which to vex the judicial ear. Strictly the members of the commission are not a partnership, as that term is known to law, but their relation to each other and to their public function, as said, may be likened, in a sense, to a partnership or voluntary association without doing violence to language. A partnership, or such association, is not a legal entity that can sue or be impleaded as

such, but it may sue in the names of the individual members of the firm, or association, describing themselves by their partnership name and style, or association name, precisely as these plaintiffs do.

It is written in the Constitution that courts of justice shall be open to every person for the administration of right and justice, and to afford certain remedy for every injury to person, property or character. [Sec. 10, Art. 2, Constitution.] That language is broad and deep-going. It is familiar doctrine that taxpaying citizens may be heard by injunction to prevent the consummation of illegal schemes putting a burden of debt or taxes upon the public, or to stop an illegal and wrongful expenditure of public money by public officials in charge thereof. [2 Joyce on Inj., Sec. 1382.] A legislative recognition of that idea may be found in Revised Statutes 1909, section 1275. [*Vide*, Black v. Ross, 37 Mo. App. l. c. 257 and cases cited.]

It must be kept in mind, too, that in suing an administrative officer of the State by injunction (not including, of course, the Chief Executive) such suit is not against the sovereign State and therefore he is not beyond the reach of injunction, the "strong arm of a court of equity." [Merchants Exchange v. Knott, 212 Mo. l. c. 647, *et seq.*] That amusing fiction served its day and is exploded.

Moreover, the general doctrine runs: "Every public officer, although not expressly so authorized by statute, has implied authority to bring any suit, which may be required for the proper discharge of his official duties; or, as a learned judge has expressed the doctrine, 'All public officers, although not expressly authorized by statute, have a capacity to sue, commensurate with their public trusts and duties.' " [Throop's Public Officers, Sec. 544.]

That sensible doctrine is in point, and authority supporting it, collated in plaintiffs' brief, will appear in our reporter's notes to this opinion.

It could not be soundly argued that the Missouri Waterways Commission is not charged with public duty and responsibility in expending the money appropriated by the Legislature to the commission for governmental purposes, for the common weal, the benefit of all the people. Counsel for plaintiffs well say under this head: "It is incumbent upon the members of this commission to see to it that the money committed to their charge by the General Assembly is used for the legitimate purposes for which it was set apart and appropriated. 'A public office is a public trust' and as trustees of this fund the plaintiffs are responsible to the people of the State for its use, and have such an interest in their official capacity as authorizes them to invoke equitable aid for its protection." We sympathize with that view of it.

Our learned Attorney-General and his learned associate counsel do not point out to us who could bring a suit to restrain the illegal and wrongful use of the public funds in question, if plaintiffs cannot do so either as taxpaying citizens or as officials in charge of the subject-matter, bounded and evidenced, as it is, by the law and which the appropriation was in aid of. Are courts (without being driven to it by some inflexible rule of law) to so rule that public interests may suffer on the theory of the wry saying: What is everybody's business is nobody's business? Or on the *laissez faire* or the-world-goes-of-itself doctrine? We know of no principle of law that is violated, or of no just interest that can suffer by holding these plaintiffs have legal capacity to sue, either as taxpaying citizens or as officers; and if in either, then the demurrer cannot stand on that foot.

If we had doubts about it we would solve them in favor of permitting them to sue; for the precepts to go by are: In cases of doubt, the least doubtful course should be taken. In doubtful cases, the more worthy is to be taken. In case of doubt, conscience

has play. Unless limited by statute, courts liberally further the right to sue. Agreeable thereto are many cases whose doctrines, by parity of reasoning, apply here.

We rule the point against defendant.

II. It is argued that the bill shows on its face that John H. Nolen is a necessary party in interest and that the fourth ground of demurrer was therefore well taken. This contention dovetails into another, namely, that the suit in effect is one to oust Nolen from an office and that the remedy in such case is not injunction, but *quo warranto*. The two questions may as well be considered together, taking the last first.

(a). Counsel for defendant have industriously searched for precedents and have marshaled a formidable array holding that the right to a public office cannot be decided by injunction. Put otherwise, that in contests over the right to an office by appointment or election, the suit must be at law by *quo warranto* and not in equity. We have no bone to pick with that doctrine. But the argument travels inadvertently on a misapprehension and has no place in the case at bar; for here there is no office or officer and the object of this suit is not to oust any one from office. An officer must be one either *de jure* or *de facto*. There must be an office before there can be an officer. The law being a bundle of rules to make life tolerable among civilized men, courts have gone to great length in sustaining the theory of *de facto* officers. Otherwise, the business affairs of mankind would fall into chaos and distress. To that end many cases may be found (and have been cited by counsel) holding that where there was an office created by law, which law was afterwards declared unconstitutional, the acts of the officer by virtue of his office during the time the law was in force were the acts of a *de facto* officer.

But principles of law relating to the acts of *de*

*facto* officers do not apply to the case at bar. One vice of the argument made is, it begs the question. It assumes Nolen is an officer either *de facto* or *de jure*. That assumption is questioned and we think rightfully.

All will agree that there can be no officer in the sense of the law unless that law has first created an office. An office, speaking in colloquial figure, is a hole. An officer is a peg. Peg and hole go together, even as a pea fits the pod or a hand the glove. Counsel have been able to put their finger on no law creating the office of "special agent of the State and the commission and expert in the work of said commission." Nowhere within the lids of the statutes is there such an office created by express provision or by implication. We are not dealing at this point with the right of the Legislature in a general appropriation bill, absent a proper title indexing such subject-matter, to create an office; nor are we dealing with that phase of the case involving the question whether the Legislature may appoint a certain man to an office in derogation of the constitutional appointing power of the executive department. We are dealing with the naked question whether the statute, such as it is, creates an office. It would be an alarming *bouleversement* in rules of hermeneutics to hold that the words descriptive or commendatory of Mr. Nolen, used by the lawmaker in Sec. 63 of the act beginning page 2, Laws of 1911, just quoted, create a public office or were intended to create one. Look at it. There are no duties prescribed as pertaining to the office or for the person mentioned, no tenure or duration of office even by implication. The source of official life is not hinted at, let alone set down. Verily the office is like the wind. It bloweth where it listeth and we hear the sound thereof. But no man knows whither it cometh or whither it goeth. He is not required to take an oath, give bond, do *anything* or report to *anybody* at

any time. Who made him an officer or who has power to unmake him?

There are two ways of getting at whether there is an office and an officer. One way is that prescribed by the statute itself. In this case the statutes, like the deeps, are dumb, giving forth no sound. Another way is to get at the matter through general definitions and principles of law. The question was up in Gracey v. St. Louis, 213 Mo. l. c. 394, and we there made some observations apposite here, viz.:

"As danger lurks in mere generalizations, one sensible method of determining what is an office is to go to the written law creating the position and determining its duties (in this instance, defendant's ordinances) and discern the legislative intent evidenced by its words. That was the plan adopted in State ex rel. v. Harter, 188 Mo. l. c. 526, *et seq.,* and in State ex rel. v. May, 106 Mo. 488.

"If, however, the question be referred to the more general definition of public office, the result would be the same. For instance, MACFARLANE, J., in State ex rel. v. Bus, 135 Mo. l. c. 332, declares the sum of the matter to be 'that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer.' An office has been defined as 'a special trust or charge created by competent authority'—more tersely still, 'a public office is a public trust.' His oath, his bond, his liability to be called to account as a public offender for misfeasance or non-feasance, the tenure of his position, etc., have been said to be *indicia* of a public officer. [State ex rel. v. May, supra; Troop v. Langdon, 40 Mich. 682.] And the general doctrine is that the idea of office clearly embraces the ideas of tenure, duration, fees or emoluments, rights and powers as well as that of duty. [6 Words and Phrases, p. 4923.] It has been aptly said that the true test of public office is 'that it

is a parcel of the administration of government.' [2 Bouv. Law Dict., tit. 'Officer.']''

Measured by the yardstick of the above pronouncement there is no office and no officer. In State ex rel. v. Nast, 209 Mo. 708, there was a writ of mandamus sued out in this court at the relation of the board of education of the city of St. Louis, against Nast, a clerk of the circuit court for criminal causes in the city of St. Louis, and against the city itself. The question was whether fines collected by him as clerk of ''the St. Louis Court of General Sessions'' should be turned over to the board for school purposes. In that case, quoting from an earlier case, Ex parte Snyder, 64 Mo. 58, we said: '' 'Numerous cases can be instanced from the books, where the acts of an incumbent of an office have been valid, upon the ground that such incumbent was an officer *de facto*. But an officer of that description necessarily presupposes an office which the law recognizes. And a quite extensive research has failed to discover an instance where an incumbent has been held an officer *de facto,* unless there was a legal office to fill; and all the cases cited from our own reports were of that sort. And as there was no such office or court known to the law as the probate and criminal court of Cass county, the conviction of the petitioner was altogether *coram non judice.'* ''

Recognizing the doctrine of the Snyder case as being a stumblingblock in their way, learned counsel for defendant insist it was badly ruled. But as, In Banc, in the Nast case, it was cited and unanimously allowed as controlling on the very point now up, its authority must be taken as unshaken.

(b). Nor was Nolen a necessary or proper party to the suit, considering the life and scope of the bill and the remedy sought. It could not be well held that he had a vested right in public money collected by way of tribute from taxpayers and held in the money chest

of the State for governmental purposes. Neither, under this bill, can it be held that Nolen can be ousted from office, for the force of the bill is spent entirely elsewhere. His title, if any, to a putative office, is only involved as a mere incident to the suit which is aimed at stopping an alleged illegal leak in the public treasury through the interpretation put by the Auditor on the statute. It cannot be contended that Nolen has power to draw warrants on the State Treasurer. The State Auditor is the sole donee of statutory power in that regard and what this bill seeks to do is to prevent the Auditor from doing that thing. As well might it have been argued that Judge Rodgers, who was judge of the St. Louis Court of General Sessions, should have been made a party to the petition in mandamus in the Nast case, supra, where the constitutionality of the act creating his court was drawn in question, as to argue that Nolen is a proper party here. As well might the school teacher, whose wages were incidentally involved, or the landlord whose lease was incidentally involved, have been made parties in Black v. Cornell, 30 Mo. App. 641, where an injunction was sought against the school directors and county treasurer to prevent the illegal dissipation of school funds, as to insist that Nolen was a proper party here. If B. is doing mischief to A. by issuing warrants on a fund, and A. wishes to put a stop to that mischief, he sued B. who is doing the mischief and not C., D. and F., who may incidentally be the recipients of benefits from the mischief when once it is a *fait accompli*. That was the course pursued in Black v. Ross, 37 Mo. App. 250. If Nolen be a proper party why not his stenographer or clerk?

The point is ruled against defendant.

III. Was that part of Sec. 63, supra, beginning with the phrase, "Of said sum $7000 must be used," etc., an unconstitutional exercise of legislative power?

We will assume, as already held, that Nolen was not
an officer, filling a public office. Attending to the lan-
guage of the challenged part of the act, it is apparent
he was not dealt with as a creditor of the State with a
claim due to be paid by an appropriation in a bill.
The words of the provision point unmistakably to
monthly payments in the future, not to pay for serv-
ices already rendered to the State. It would be folly
to speculate at any length on the object or point of
view of the lawmaker in that provision; for what is
not dark is inscrutable. Could it be intended the
courts should *feel out* or *smell out* a public office, if
called to construe the act? Or build up one, by airy
fancy or strained implication on such a bare founda-
tion as a mere legislative grant of a salary or gra-
tuity? Or is the legislative hint that Nolen is an
"expert" and "agent" effective in that regard?
Those questions baffle answer except by a guess. If
Nolen was already an employee of the commission, did
the Legislature intend he could not be discharged for
cause? Hardly. Such theory is not an imputable one
to a co-ordinate branch of the government. If not
an employee, was it intended to compel his employ-
ment *willy nilly* by a business board of "high qualifi-
cations?" If so, why did the law not say so? We
will not suppose it so. Some of the language indi-
cates he was dealt with as an "agent of the State and
commission." But what basis is there for that in law
or fact? Who hired him as an agent, on what terms
and under what law? Some of the language indicates
he was made independent of the commission. For in-
stance, he reported to no one, he submitted his own
vouchers to the Auditor and to that extent, at least,
was given a free rein. As to that, whatever his ob-
ject, it is clear the lawmaker was careful not to make
him an officer with the *indicia* of office. As hereto-
fore pointed out, he gave him no term, no official name,

244 Mo. Sup.—46

created no office, no tenure, 'no duties, did not assume to appoint him by saying so, and, under the law as written, *he was entitled to his money without performing any duties whatever.* Minus official orbit, he is a wandering star in Missouri governmental heavens. In that view of it, we can come to no conclusion except that he is dealt with *as an individual.* Hence the provision that $7000 of the $17,000 appropriated to the commission must be paid to him on his own vouchers, amounted in reason and law to an out-and-out gift to him as an individual of $7000 of the State's money in violation of Sec. 46, Art. 4, of the Constitution, supra. [State ex rel. v. St. Louis, 216 Mo. 47; State v. Distilling Co., 237 Mo. l. c. 106-7.] The appropriation fell squarely within the evils struck down by that constitutional interdiction, whereby the people set impassable bounds to legislative power. We have no call by construction to abate the vigor of that wise provision a whit.

The constitutionality of a law is not to be lightly drawn in question. A statute sleeps at the start in the nursing bosom of many friendly presumptions. But, however delicate the task, courts may not put away from them the grave duty of saying one is unconstitutional when it is so beyond a reasonable doubt. [State ex rel. v. Warner, 197 Mo. 650].

Furthermore there can be no two ways about it that it is special legislation of an undisguised and typical kind, granting a special or exclusive right or privilege to an individual, Nolen, in violation of Par. 26, Sec. 53, of Art. 4 of the Constitution, supra. Special legislation is that made for an individual as distinguished from a class, precisely as here. [State ex rel. v. Gordon, 236 Mo. l. c. 162, *et seq.*]

IV. The constitutionality of part of the act does not affect an independent part making a perfect law. The case in that respect falls within the doctrine of

State ex rel. Tolerton v. Gordon, 236 Mo. 142, and State ex rel. Bixby v. St. Louis, 241 Mo. 231, and is to be ruled the same way. *De similibus idem est judicium.*

The premises considered, as the case breaks on points determined, other questions discussed by counsel are reserved.

The judgment should be reversed and the cause remanded, with leave to defendant to answer, if he so elect, and for further proceedings in accordance with this opinion.

*Brown, J.,* concurs; *Valliant, C. J.,* dissents, in an opinion filed, in which *Ferriss* and *Kennish, JJ.,* concur; *Graves, J.,* dissents, in an opinion filed; *Woodson, J.,* dissents. The majority of the court not concurring, the judgment of the court is set forth in a *per curiam.* (ante, p. 707).

## DISSENTING OPINION.

GRAVES, J.—I dissent from the opinion of our brother LAMM in this case. With his well-known versatile pen he has touched most splendidly all questions in the case except the one of the most vital importance, and that question is the right of the plaintiffs to maintain this suit at all. This question is discussed, but in glaringly general terms, leaving the meat and the law of the proposition practically untouched. When we say that he touches in splendid style other questions in the case, we do not mean to pass judgment upon the legal questions involved. We refrain from expressing such an opinion, because if what we think of the question which stands in the doorway of this case, is right, then the consideration of other questions would be mere *obiter*-chaff thrown in with the wheat, or mud in what should be the clear waters of jurisprudence. We have at times muddied the waters (State ex rel. v. Hitchcock, 241 Mo. 433), but

an opinion in a case which, in fact and law, is no case, adds no light to jurisprudence. We shall, therefore, discuss but the one question, i. e., have these plaintiffs the right to maintain this suit? We think not, and for the several reasons expressed in the succeeding paragraphs.

I. In the $7000 item of this appropriation bill, which the lawmakers direct to be paid to Nolen, the Missouri Waterways Commission, as a commission, has no interest. Such commission could not use a dollar of it, even if it be granted that Nolen can't use it. When Sec. 63 of the Appropriation Act of 1911 (Law 1911, p. 18) is read carefully, it will be seen that there is an appropriation of $17,000 divided into two items (1) an item of $7000 to be under the control of and expended by Nolen, and (2) the remainder of $10,000 which may be used by the commission. Under the appropriation the commission could not use a dollar of this $7000, even though we concede that Nolen cannot use it. Under no circumstances can the commission for its own purpose use more than what is left after deducting from the appropriation the alleged unlawful item.

In other words, if for any reason this appropriation item of $7000 is illegal and void, it was so from the beginning and as to that sum it is as if never appropriated. This item simply remains in the State Treasury as if never appropriated. If it could be said that it reverted at all, it reverts to the State and not to the Waterways Commission. Upon its very face the Appropriation Act expresses the legislative intent of never permitting this sum to pass through the hands of the commission itself. So that financially speaking the commission, as a body, has no interest whatever in this item. If the lawmakers overstepped constitutional bounds in appropriating it as they did, it remains as if never appropriated or segregated

from the mass of funds in the State Treasury. As to this item the commission has no more financial interest than would the dental board, the barber board, or any other board of the State.

If therefore it be said that the commission as a legal body is maintaining this action upon the theory that it is interested in the particular fund, such contention cannot be sustained.

Suppose we take the other side of the case and see how we would come out. Suppose the Missouri Waterways Commission should undertake to expend this $7000 for its own expenses. Suppose Gordon, as Auditor, refused to audit their accounts as against such $7000, and the commission brought mandamus to compel him to audit their expense accounts as against it, would this or any other court say their permanent writ of mandamus would be granted? We think not, because the law says such part of the appropriation *"must be used* and is to pay the salary, traveling, hotel, clerical, stenographic, and other expenses of John H. Nolen." The word used is "must," which in this connection is mandatory and not directory.

If this court was hearing a mandamus to compel the State Auditor to pay out this $7000 to the commission, in interpreting the statute making the appropriation, in order to get the legislative intent, which is the basic principle of all statutory construction, we would have to consider the whole act, even though it be conceded that a portion of the act is violative of constitutional provisions.

BLACK thus states the general rule in his work on Interpretation of Laws (2 Ed.), page 317: "In the construction of a statute, in order to determine the true intention of the Legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning

of any of its parts." And going to the direct point on page 321 he says: "Since the object of reading the statute as an entirety is not to determine the validity of any particular part, but to search out the general legislative meaning, it makes no difference that parts or sections of the act may be unconstitutional and therefore invalid; they may be considered in construing the other provisions of the law, in fact, they should not be disregarded. So, also, where part of an act has been repealed, it must, although of no operative force, be considered in construing the rest." See also cases cited by the author in support of the latter rule.

In fact, there is no other reasonable way of finding the legislative intent as to the valid portion of a measure without considering the invalid portion. The legislative mind operated upon the whole subject of the entire act, and the legislative intent as to any particular portion of the act cannot be fairly gathered without considering the whole. So that in the supposed mandamus case we would, in determining what portion of the $17,000 could be used by the commission itself, have to consider the whole act. When we did, we would be forced to say that there was no intention upon the part of the Legislature to allow the commission, as a body, to expend this $7000, and that for that reason the commission, as a body, had no interest in the $7000.

For the sake of the argument we may grant it to be true that the commission, as such, may sue as to things in which it has an interest, but that does not authorize it to sue as to things in which it has no personal interest. I have the right to sue in replevin for a horse, yet if I state upon the face of my papers that I have no interest in or title to the horse, I cannot maintain the suit. So in the case at bar, grant it that the commission has the right to sue in any matter in which they are interested, yet they so state their case

as to show that they have no interest, as a commission, in the subject-matter of this suit. They plead the very statute which we have discussed.

From this standpoint the ruling of the learned trial judge was right.

II. Point is made by the Attorney-General that the lawmakers did not authorize the Missouri Waterways Commission to sue or be sued, and some persuasive authority and argument is presented along this line, but with the view we have expressed in our paragraph one, a discussion of this contention can well be omitted. If the Missouri Waterways Commission, as a commission, or as a body, has no interest in the subject-matter of this suit, then the demurrer was properly sustained, even though it be conceded that in proper cases such commission could sue and be sued. The law creating the commission is loosely drawn, its powers and duties more loosely defined, and we therefore desist from duscussing its right to sue in a case where it, as a commission, has a direct interest. It is sufficient to say, as we have said, that in this case the petition by it filed shows upon its face that it has no earthly interest in this fund of $7000, the sole bone of contention here.

III. If as a commission the plaintiffs have no right to maintain the suit for want of interest therein, then can they maintain it as taxpaying citizens? We say no in this case, because they have never sued in the capacity of taxpayers. As stated in the beginning, my brother touches this question lightly and only in generalizations. No attempt is made to analyze the petition. It is assumed that the individual commissioners have sued in a dual capacity, i. e., (1) as a commission or legally constituted body, having a right to sue, and (2) as five individual taxpaying citizens, having a right to sue as such. Such is not the petition

for injunctive relief in this case. These five men have not sued in the capacity of individual taxpayers, and if they had their petition would be fatally defective for a misjoinder of parties. As a commission they are suing to preserve the whole fund of $17,000 for their own use. As taxpaying citizens they would be suing to keep $7000 of the funds in the public treasury. In other words, their interests would be diverse. But we need not go further upon this matter. They have not sued as taxpayers, and such is evidently an after-thought lodged in the briefs here after defeat *nisi*. The trial judge should have a fair show. One case should not be tried below, and another and different case here.

Let us now go to the petition. The skill and ability of plaintiff's counsel bespeak well-drawn pleadings. We feel that the importance of giving to the trial court a fair consideration of the case which he tried on demurrrer demands a setting out of the material parts of the petition, which parts, as "ear-marks," characterize the instrument. We shall omit only immaterial portions. Such petition as taken from the files sent here from the circuit court reads:

William K. Kavanaugh, Alexander M. Dockery,
    Cyrus P. Walbridge, David W. Hill and Edgar
    C. Ellis, Constituting the Missouri Waterways
    Commission ........................Plaintiffs,
               v.                      In the Circuit Court.
John P. Gordon, State Auditor, ...............,....Defendant.

Come now the above named plaintiffs and state that they constitute the Missouri Waterways Commission, having been as such duly appointed and commissioned by the Governor of the State of Missouri, and acting as such possessing all the qualifications prescribed by law, and *that each of the said plaintiffs is a tax paying citizen of the State of Missouri;* that the defendant, John P. Gordon, is the duly elected, qualified and acting Auditor of the State of Missouri.

Plaintiffs further state that under section 11827, Revised Statutes 1909, it is provided that in all cases of accounts audited and allowed against the State and in all cases of grants, salaries, pay and expenses allowed by law, the Auditor shall draw a war-

rant on the Treasurer for the amount due, and that under and by virtue of said statute all accounts against the State on account of salaries and expenses payable out of the State revenue shall be audited and allowed by the Auditor and a warrant drawn therefor on the Treasurer, and that no moneys shall be paid out of the State Treasury on such account except upon such audit and warrant as drawn as aforesaid.

Plaintiffs further state and show to the court that the Legislature of the State of Missouri, constituting the Forty-Sixth General Assembly of said State, did appropriate out of the moneys in the State Treasury not otherwise appropriated chargeable to the State revenue fund, the sum of seventeen thousand dollars to the Missouri Waterways Commission, which said sum not otherwise having been appropriated is available for the purpose of said Missouri Waterways Commission upon vouchers and warrants properly audited and drawn in accordance with law. That in that part of the appropriation bill so appropriating said sum of seventeen thousand dollars for the purpose aforesaid, said General Assembly undertook illegally and in violation of law to limit the use of seven thousand dollars of the sum so appropriated as aforesaid to the payment of the salary, traveling, hotel, clerical, stenographic and other necessary expenses of one John H. Nolen, as special agent of the State and the Missouri Waterways Commission and expert in the work of said commission, five thousand dollars of the same to be used to pay the salary of said John H. Nolen, to be paid in monthly installments, and two thousand dollars of said sum to be used to pay the traveling, hotel, clerical, stenographic and other necessary expenses of the said John H. Nolen, the same to be paid upon vouchers issued by said John H. Nolen and approved by the State Auditor.

Plaintiffs further state and show to the court that said part of said appropriation bill so attempting to limit seven thousand dollars of the said appropriation of the seventeen thousand dollars to the payment of the salary, traveling, hotel, clerical, stenographic and other necessary expenses of John H. Nolen, as aforesaid, is unconstitutional, void and wholly without authority of law, for the following reasons, to-wit:

Here follow the four reasons why the proviso above mentioned is violative of constitutional provisions, and the petition proceeds:

Plaintiffs further state that, constituting the Missouri Waterways Commission, it is their duty to conserve and expend the funds appropriated for the purpose of said commission, to the end that the greatest benefit and good may result to the state of Missouri, and to that end the Missouri Waterways Commission has heretofore from time to time requested the said defendant, John P. Gordon, to refuse to audit and approve the vouchers issued by

said John H. Nolen, on account of his salary and expenses, as in said part of said appropriation bill attempted to be provided for, on account of the unconstitutionality and illegality of said part of said appropriation bill, but. that said John P. Gordon, the defendant herein, has refused to accede to the request of the plaintiffs, constituting said board, and has, despite the request of plaintiffs as aforesaid, approved the vouchers issued by said John H. Nolen on the accounts, aforesaid, and the said vouchers so approved up to this time have been paid by the Treasurer of the State of Missouri, and that unless restrained from so doing the said John P. Gordon, Auditor of the State of Missouri, will continue to approve the vouchers so issued, notwithstanding the unconstitutionality and illegality of said part of said appropriation bill, and has advised plaintiffs of his purpose and intention so to do.

Wherefore the plaintiffs, constituting the Missouri Waterways Commission, being remediless by the ordinary processes of law, pray that the defendant, John P. Gordon, be perpetually restrained and enjoined from approving or auditing or allowing the vouchers issued by said John H. Nolen on account of salary or expenses, as in said part of said appropriation bill attempted to be created and allowed, and that the said John P. Gordon, Auditor as aforesaid, be perpetually restrained and enjoined from drawing any warrant or warrants on the Treasurer of the State of Missouri on account of the vouchers drawn or prepared by said, John H. Nolen. as attempted to be provided in said part of said appropriation bill and that in the meantime a temporary injunction may be allowed restraining and prohibiting the said defendant, John P. Gordon, from doing any of the acts aforesaid until the final hearing of this cause, and for such other and further relief in the premises as to the court may seem meet and proper.

Can you imagine two lawyers of the known ability of plaintiffs' counsel drawing a petition for tax-paying citizens in these terms. When they entitle their case there is no thought of suing as taxpayers. After setting out the names in the title of the bill in equity, they thus designate the capacity in which they seek redress—"constituting the Missouri Waterways Commission," not a word about taxpaying citizens; not a word indicating that they were suing in a dual or double capacity. Had they thought of suing in a dual capacity, and lawyer would have said, "Constituting the Missouri Waterways Commission and individually as taxpaying citizens."

But they do not do that. They earmark the capacity in which they sue by saying we sue as "constituting the Missouri Waterways Commission."

Now let us go to the body of the petition and see the purpose of the suit and from this seek a conclusion as to the capacity in which the parties plaintiff have sued. In one place in the petition it is said:

"Plaintiffs further state that, *constituting the Missouri Waterways Commission,* it is their *duty to conserve the funds appropriated for the purpose of said commission,* to the end that the greatest benefit and good may result to the State of Missouri and the citizens thereof, and to that end the said Missouri Waterways Commission has heretofore from time to time requested the said defendant, John P. Gordon, to refuse to audit and approve the vouchers issued by said John H. Nolen on account of his salary and expenses..

"Wherefore, the plaintiffs, *constituting the Missouri Waterways Commission,* being remediless by the ordinary process of law, pray that the defendant, John P. Gordon, be perpetually restrained."

How do they sue under the body of their petition? They have answered, and not this court. They say that they sue "constituting the Missouri Waterways Commission," with a big "M," a big "W," and a big "C!" Going further, what is the purpose of the suit? They answer, and this court cannot change their answer. They say "it is their duty to conserve the funds appropriated for *the purpose* of said commission," and that they as a body, as the commission, sue to the end of conserving the funds ($17,000—not $10,000) for use by the commission, and no part of it for the use of Nolen. This part of the petition clearly shows that they seek relief as a commission, not as taxpayers. As taxpayers it could make no difference whether the money was expended by the commission or by Nolen. In either event, as to them as taxpayers, it would

be lost. If the $7000 of public funds is to be squandered, it little concerns the taxpayers, whether it is squandered by Nolen or the commission. The purpose of the plaintiffs as indicated by their petition is not to stop the use of this $7000 altogether, but to prevent the use of it by Nolen, to the end that they might use it. They say it is their duty to preserve the full $17,000 for the purpose or use of the commission.

In another part of the petition it is said:

"Plaintiffs further state and show to the court that the Legislature of the State of Missouri, constituting the Forty-sixth General Assembly of said State, did appropriate out of the moneys of the State Treasury not otherwise appropriated, chargeable to the State Revenue Fund, the sum of seventeen thousand dollars to the Missouri Waterways Commission, which said sum not otherwise having been appropriated, *is available for the purpose of said Missouri Waterways Commission* upon vouchers and warrants properly audited and drawn in accordance with law. That in that part of the appropriation bill so appropriating said sum of *seventeen thousand dollars for the purpose aforesaid* said General Assembly undertook illegally and in violation of law to limit the use of seven thousand dollars of the sum appropriated as aforesaid to the payment of the salary, traveling, hotel, clerical, stenographic and other necessary expenses of one John H. Nolen, . . . Plaintiffs further state and show to the court that said part of said appropriation bill so attempting to limit seven thousand dollars of said appropriation of the seventeen thousand dollars to the payment of the salary, traveling, hotel, clerical, stenographic and other necessary expenses of John H. Nolen, as aforesaid, is unconstitutional, void and wholly without authority of law, for the following reasons, to-wit.''

This again clearly shows that they were suing to preserve intact the full $17,000, for the use of the commission. In fact all the way through the petition runs the one thought of seeking redress for plaintiffs as members of the commission, and not as taxpaying citizens. But let us go to the prayer and see for whom they ask redress. Note the reading: ''Whereupon, the plaintiffs, *constituting the Missouri Waterways Commission* [again we have big letters], being remediless by the ordinary processes of law, pray that the defendant, John P. Gordon, be perpetually restrained,'' etc. Who are the plaintiffs without further remedy? Five individuals ''constituting the Missouri Waterways Commission.'' Not a word about five individuals as taxpayers being without remedy. The gravamen of the charge made in this petition is that the Legislature wrongfully limited the use of $7000 of the appropriation made to plaintiffs, and they seek to remove this limitation to the end that they may use the whole sum. This bespeaks action by them as commissioners and not as taxpayers. Even had they not expressly declared that they sued to ''conserve'' this fund for their own use, such would be the clear inference to be drawn from the petition.

Not only do we have before us the petition as we have thus discussed, but with our files is a certified copy of the appeal bond given below. In this they construe their own petition. They do not say that they as individual taxpayers are seeking redress. As such they give no bond. Note the language in the body of the bond. It reads:

''*Know all men by these present*: That we, William K. Kavanaugh, Alexander M. Dockery, Cyrus P. Walbridge, David W. Hill and Edgar C. Ellis, *constituting the Missouri Waterways Commission,* as principal, and Herbert S. Hadley, and Sam S. Haley as security, are held and firmly bound unto John P. Gordon, State Auditor, in the sum of five hundred

and no' 100ths dollars."

The italics are ours, as they have been in other quotations. When they sign the bond it is thus signed.

"WILLIAM K. KAVANAUGH,
ALEXANDER M. DOCKERY,
CYRUS P. WALBRIDGE,
DAVID W. HILL,
EDGAR C. ELLIS,

*Constituting the Missouri Waterways Commission.*
By WM. K. KAVANAUGH,
H. S. HADLEY,
SAM S. HALEY."

We repeat what we said in the beginning, that it is clear that the idea of this suit being by individual taxpayers is an afterthought put in the briefs here, and one not sustained by the record. The petition nowhere says that they sue as taxpayers. It nowhere seeks a remedy for taxpayers, and no taxpayers pray for any relief. There is but one short clause that even mentions the words "taxpaying citizens" and that short clause we have italicized in the copy made of the petition herein. When the whole context of the petition is considered, this awkwardly placed clause does not change the character of the petition. There is nothing to show that they sue in that capacity or seek redress in such capacity. Nor by the title or otherwise is it shown that five individuals sought to sue in a dual capacity, if such could be done.

To my mind the learned trial judge rightfully passed upon the case before him, and our principal opinion passes upon a case which was never before him. In the principal opinion we overlook the fact that by trying to "preserve" the full fund of $17,000 for the uses and purposes of the commission, the plaintiffs themselves eliminate the idea of the taxpayers' interest. Under the idea of preserving and expending the whole appropriation of $17,000, the burden as to

taxpayers is neither greater nor less, whether the whole sum is expended by the commission, or a part of it by Nolen and the remainder by the commission. The commission, as a body, is not a taxpayer. As a commission they own no property. Until they sue as individual taxpayers and not as members of the commission, they have no standing as taxpayers. This they have not done, and a reading of their petition so shows.

We shall go no further. It will be time enough to discuss the right of a taxpayer to enjoin a State officer, when that kind of a petition is before us. Nor is this case on the point discussed in our point one, governed by the case of State ex rel. Tolerton v. Gordon, 236 Mo. 142. In that case we had a clear legislative intent to appropriate a specified sum to the game department. The whole sum was appropriated to that department. Here the Legislature makes a gross sum, but divides it into two items. If the lesser item is void for constitutional reasons, such item has never been appropriated, and leaves as an appropriation only the remainder.

The judgment *nisi* was right, and should be affirmed.

## DISSENTING OPINION.

VALLIANT, C. J.—I am satisfied that the General Assembly intended to appropriate only $10,000 for the use of the Missouri Waterways Commission, and that the $7000 item was appropriated for the use of Mr. Nolen for services which he was supposed to thereafter render. It is immaterial, therefore, so far as the Waterways Commission is concerned, whether the appropriation to Nolen was valid or invalid; if Nolen is not entitled to it, no one else is. I am also satisfied that the appropriation to Nolen is unconstitutional, for the reason stated by Brother LAMM in

the main opinion in this case. Because the Waterways Commission has no interest in the disputed item of $7000, the demurrer was in my opinion, properly sustained, and the judgment should be affirmed. *Ferriss* and *Kennish, JJ.,* concur in this opinion.