## Ex Parte RENFROW.

### In Banc, December 12, 1892.

1. **Constitution**: CRIMINAL COURT: COLLATERAL ATTACK. The legal existence of a criminal court cannot be collaterally assailed for the reason that the county in which it is established by the legislature did not have a population exceeding fifty thousand as required by the constitution, article 6, section 31.

2. ———: ———: SPECIAL LAW. A law providing for a criminal court in a county having a population exceeding fifty thousand is not obnoxious to the provision of the constitution prohibiting the enactment of special laws.

### Habeas Corpus.

WRIT DENIED.

*James Orchard* and *L. O. Nieder* for petitioner.

(1) The courts will take judicial notice of the official records of the census, so far as they relate to the state,—counties and cities in the state. *State ex rel. v. Herman,* 75 Mo. 340, 352; *State ex rel. v. County Court,* 89 Mo. 237. (2) The constitutional provision requiring a county to have over fifty thousand inhabitants to authorize the establishment of a criminal court is mandatory. "If authority is given expressly, though by affirmative words, upon a defined condition, the expression of that condition excludes the doing of the act authorized under other circumstances than those so defined. *Expressio unius, exclusio alterius.*" *North Stafford, etc., v. Ward,* L. R. 3 Exch. 177; 12 R. I. 651; *Smith v. Stevens,* 10 Wall. 321; 1 Kent's Commentaries, 467, note *d;* 1 Sugden on Powers, 258, *et seq.;* *City v. Whitney,* 36 Conn. 373; *Dist. etc. v. City, etc.,* 7 Iowa, 262; *Coast*

*Line, etc., v. City,* 30 Fed. Rep. 649; *Mayor, etc., v. Ray,* 19 Wall. 476; *Thomas v. Railroad,* 101 U. S. 82; Broom's Maxims, 651, 654. (3) The court will pass on the constitutionality of a law in a *habeas corpus* proceeding. *Ex parte Siebold,* 100 U. S. 371; *Ex parte Clark,* 100 U. S. 399; *Ex parte Rosenblatt,* 14 Pac. Rep. 298; *Brown v. Doffs,* 66 Iowa, 193; *Ex parte Burnett,* 30 Ala. 461; *Ex parte Rollins,* 80 Va. 314; *Ex parte Mato,* 19 Tex. App. 112; *In re Payson,* 23 Kan. 757; *Ex parte Snyder,* 64 Mo. 58. The constitutionality of a statute creating a court goes to affect its jurisdiction. *Darah v. Westbridge,* 44 Tex. 388. (4) The legislature may exercise all the powers which are properly legislative, and which are not taken away by our own or by the federal constitution. *Field v. People,* 3 Ill. 79; *Emerick v. Harris,* 1 Binn. (Pa.) 416, 420; Cooley on Constitutional Limitations, 192; Bishop on Written Law, sec. 92; *Sharpless v. Philadelphia,* 21 Pa. St. 147, 161; *Weister v. Hade,* 52 Pa. St. 474; Cooley on Constitutional Limitations, 10, 11; Endlich on Interpretation of Statutes, sec. 535, pp. 753, 754. (5) Constitutional provisions are absolutely mandatory, and in no case regarded as directory only, to be obeyed or not within the discretion of either or all the departments of the government. *Hunt v. State,* 22 Tex. App. 396; *Varney v. Justice,* 6 S. W. Rep. 457. (6.) Section 53 of article 4, subdivision 14, constitution of Missouri, prohibits the legislature from passing any special or local laws creating offices or prescribing the powers and duties thereof in counties, etc. The criminal court of Greene county is a county office, established and the duties defined and fees regulated by a special act of the legislature, passed April 26, 1889. That being the case, it is void on its face. *State ex rel. v. Herman,* 75 Mo. 340; *State ex rel. Board v. County Court,* 89 Mo. 237.

*John M. Wood,* Attorney General, and *Edward Robb,* for the State.

(1)   The courts will never "declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond a reasonable doubt." A reasonable doubt must be solved in favor of the legislative action, and the act sustained.  Cooley's Constitutional Limitations [6 Ed.] p. 216, *et seq.; State v. Hope,* 100 Mo. 347; *State ex rel. v. Pond,* 93 Mo. 606; *State ex rel. v. Railroad,* 92 Mo. 137; *State v. County Court,* 51 Mo. 82.   (2)  Where the legislature, in respect to the subject-matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within constitutional limits and observed the constitutional conditions, the courts are not at liberty to inquire into the proper exercise of the power.  "They must assume that the legislative discretion has been properly exercised.  If evidence was required, it must be supposed that it was before the legislature when the act was passed; and, if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding."   Cooley on Constitutional Limitations [6 Ed.] 220, *et seq.; State v. Wiley,* 109 Mo. 439; *State v. Rich,* 20 Mo. 393; *State ex rel. v. County Court,* 50 Mo. 317.  See separate opinion in same case, p. 325; Cooley on Constitutional Limitations, pp. 52, 56, 152, *et seq.; State v. Daniels,* 66 Mo. 192.

BRACE, J.—By an act of the general assembly "approved April 26, 1889," a criminal court was established within and for the county of Greene.  On

the twenty-sixth day of August, 1891, the petitioner was tried and convicted of murder in the first degree, and afterwards on the second of September, 1891, was duly sentenced in said court to be hung, and committed to the custody of the respondent sheriff of said county for execution of the sentence.    He now comes to this court by writ of *habeas corpus*, and asks to be discharged from such custody, on the ground that said court had no legal existence, the act creating it being unconstitutional and void.

The constitution provides that "the general assembly shall have no power to establish criminal courts except in counties having a population exceeding fifty thousand.    Art. 6, sec. 31.    By the first section of said act it is provided that "pursuant to sections 1 and 31 of article 6 of the constitution    *    *    *    a court of record is hereby established in the county of Greene, said county having a population exceeding fifty thousand inhabitants, and to be designated and called the criminal court of Greene county."    Session Acts, 1889, p. 86.

It is not contended that the act was not passed in manner and form as required by the constitution, and, upon its face, it appears to be strictly within the power of the legislature, as limited by the constitutional provision quoted; but it is insisted as matter of fact that Greene county at the time the law passed did not have a population exceeding fifty thousand, and as evidence of that fact it is proposed to show that by the United States census of 1880, Greene county had only a population of twenty-eight thousand eight hundred and one, and by the United States census of 1890 had only a population of forty-eight thousand nine hundred and sixteen; that at the general election held in said county on the sixth day of November, 1888, there were cast only nine thousand seven hundred and thirty-six

votes for presidential electors, and at the general election held in said county on the fourth day of November, 1890, only nine thousand one hundred and forty-five votes were cast for the candidates for the office of superintendent of public schools. Admitting this evidence for the sake of argument, it does not *prove* that Greene county did not have a population exceeding fifty thousand on the twenty-sixth day of April, 1889, the date of the approval of the act. Its whole force and effect is to raise a presumption that on that day said county did not have a population exceeding fifty thousand, and upon this presumption of fact we are asked to overthrow an act of the legislature passed in manner and form as required by the constitution. We cannot do it in this proceeding. The minds and consciences of those constituting the legislative department of the state when called upon to act on this law, under the solemn sanctions of their oath of office, were charged by the constitution with the duty of inquiring into and determining this question of fact. The only presumption we can indulge in regard to their action is that they did their duty, duly inquired into, and, upon evidence satisfactory to themselves, ascertained that Greene county had at the time the population required by the constitution. What that evidence was, we do not know, have no way of ascertaining, and are not at liberty to inquire.

The very nature of the constitutional duty they were called upon to perform required the determination of this question of fact before that duty was performed. We must assume that the legislative discretion was properly exercised; that the fact required to be found by the constitution, that Greene county had a population exceeding fifty thousand, was properly so found, as declared upon the face of the statute. Cooley on

Constitutional Limitations [6 Ed.] p. 52, *et seq.*, and p. 220, *et seq.*

It is not necessary to go to decisions in other jurisdictions for cases illustrating the correctness of this principle. In *State v. Rich*, 20 Mo. 393, decided in 1855, in which it was sought to quash an indictment on the ground that the court in which it was found had no legal existence, for the reason that it was created by an act of the legislature in violation of a constitutional prohibition, such prohibition being dependent upon the existence of a certain state of facts, this court, speaking through Judge LEONARD said: "It was the duty of the legislature to determine the matter for themselves before passing the act, and a proper respect for a co-ordinate branch of the government requires us to presume that they did make the inquiry, and found that no such consequences would result, and this presumption must stand until our consciences are satisfied in some proper manner that the fact was otherwise. * * * Whether there is any method, under our existing laws, of instituting an inquiry into the validity of a legislative act alleged to be void upon the ground now suggested, we are not here called upon to decide; but, however this may be, we think such a proceeding must be a direct proceeding for that purpose, so that the judgment of the court may operate, as it were, *in rem*, and have the direct effect of settling the question permanently in such manner that it cannot afterwards be made the subject of judicial investigation. Any other course would, it seems to us, be impracticable, and if practicable full of intolerable inconvenience and against all reason. * * * Among the first acts necessary to put the law into operation is the appointment of the proper officers by the governor. He is required to act—the law imposes the duty upon him. There is nothing appearing upon the face of the act

itself that conflicts with the constitution, and he has no authority to institute any inquiry into the matter which is alleged to constitute its invalidity. The judges, too, are directed to hold their courts and transact the business that is brought before them; and they too, like all others, must presume that the law is constitutional until it is made to appear otherwise, and cannot themselves go into a judicial investigation of the question without involving the absurdity of allowing a court so established to be a lawful tribunal for the purpose of adjudging itself a nullity. Civil suits and public prosecutions are instituted in these courts, and judgments are rendered affecting the lives and persons and property of individuals, and after the lapse of years all these things, whenever questioned collaterally, are to be adjudged void—the evil could not be endured."

The learned judge then notes that if a law could be attacked collaterally in the courts upon the ground that an extrinsic fact could be inquired into upon the existence of which the legislative power depended, the absurdity might be involved of the courts one day holding that an act was constitutional and the next day unconstitutional, as the evidence tending to prove that fact might vary in different cases, or be differently weighed by different courts, and sums up his opinion by saying: "But we need not press these things farther; the result is manifest; all such inquiries must be excluded whenever they come up collaterally, and the county, its courts and officers must be treated as things existing in fact, the lawfulness of which cannot be questioned, unless in a direct proceeding for that purpose."

This decision was followed in the subsequent cases of *State v. Leonard*, 22 Mo. 449, and *State v. York*, 22 Mo. 462, and in the recent case of *State v. Wiley*, 109 Mo. 439. In this last case the question of the consti-

tutionality of the very court and act now under consideration was questioned by a defendant indicted in said court for a felony by a plea to the jurisdiction of the court based upon exactly the same grounds as the petition in this proceeding. And division number 2 of this court, after largely quoting from Judge LEONARD's opinion, fully sustained his views, and the ruling of the criminal court overruling the plea. And it now may be considered settled law in this state, that where it becomes necessary for the legislative department of the state to inquire into and determine a question of fact upon which depends its power under constitutional restrictions to enact a given law, and they do so inquire and determine that question of fact, it will not be again inquired into by the judicial department of the state in a collateral proceeding.

For the purpose of the case in hand this ruling is sufficient. We find nothing in conflict with this ruling in any decision of this court, certainly not in the case of *Ex parte Snyder*, 64 Mo. 58, in which it was held that a court had no legal existence, although attempted to be created by an act of the legislature, which, upon being read in the light of the constitutional provisions on the subject, without extrinsic evidence, was found to be plainly inconsistent with and repugnant to its provisions, and the same may be said of the other decisions of this court to which we have been cited by counsel for the petitioner.

There is nothing in the suggestion that the act in question is obnoxious to the provisions of the constitution in regard to special legislation. The legislature plainly has power to provide for a criminal court in any county of the state having a population exceeding fifty thousand.

The petitioner will be remanded to the custody of the respondent sheriff as aforesaid for execution of the sentence of said criminal court. All concur.