THE STATE ex rel. GEORGE RUPPEL et al. v.
JOHN WIETHAUPT, HERMAN HACKMAN,
and GEORGE LEHMANN, Constituting the
County Court of St. Louis County, AND DRAIN-
AGE DISTRICT NUMBER ONE, Appellants.

Division One, January 3, 1914.

1. **DRAINAGE DISTRICT: Notice of Viewers' Report.** The
statute regulating the establishment of drainage districts in
1906 (Laws 1905, p. 180 et seq.) requires that, after the report
of the first viewers has been filed, notice shall be given of the
pendency of the petition, "the appointment and report of said
viewers, the place of beginning, route and terminus" of the
ditch, etc.; and that means that notice must be given of the
subject-matter of the viewers' report, not merely of the fact that
they have made a report.

2. ————: ————: **Jurisdiction of County Court.** The petition
for the establishment of a drainage district described the ditch
as beginning on or about the land of A. north of mile post 32
of the Rock Island railroad, running thence east *along the right
of way* to the Bonhomme creek, and then in a northerly direc-
tion to the river. In accordance with the statute (Laws 1905,
p. 180 et seq.) viewers were appointed by the county court, who
reported that the ditch should begin at a point on the land of
A, northwest of mile post 32 of the Rock Island railroad, and
run thence east and *nearly parallel with the railroad, at an
average distance of* 200 *feet from it*, across the lands of several
owners named, to Bonhomme creek, thence in a northerly direc-
tion, across other lands, to the river. Notice was then pub-
lished of the pendency of the petition, of the appointment of
the viewers, and of the fact that they had filed their report,
etc., but no description of the proposed ditch was included save
that set out in the petition. *Held*, that the statute as amended
in 1905 requires notice of the subject-matter of the viewers'
report, and where, as here, there is a material variance be-
tween the description of the ditch as set out in the petition
and that included in the viewers' report, but not published,
the county court does not acquire jurisdiction to establish the
ditch in accordance with the report of the viewers.

3. ————: **Statutory Appeal: Notice.** While an appeal lies from
the county court in a proceeding to establish a drainage dis-
trict, the statute authorizing it distinctly specifies the questions
that may be considered by the court to which the appeal is
taken and thereby denies any remedy by appeal for the insuf-
ficiency of the notice the statute requires to be given.

4. **CERTIORARI: Office of the Writ.** The office of *certiorari* is to bring the record of the proceedings of an inferior court or tribunal before a superior court to determine whether it has acted legally, and the leading object of the writ is to keep inferior judicatories within the bounds of their jurisdiction.

5. ————: **Drainage District: Jurisdiction: Notice of Viewers' Report.** *Certiorari* is the proper remedy to try the action of a county court in a statutory proceeding to establish a drainage district, where the court has proceeded to establish the ditch without giving notice of the viewers' report, particularly where, as here, the record affirmatively shows that legal notice was not given.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*J. C. Kiskaddon* and *A. H. Kiskaddon* for appellants.

*D. C. Taylor* and *R. H. Stevens* for respondents.

BLAIR, C.—This is an appeal from a judgment of the circuit court of St. Louis county quashing, on *certiorari,* the record of the county court of St. Louis county relating to the establishment of Drainage District No. One in that county. The character of the questions raised makes it necessary to set out portions of the county court record.

Drainage District.

The petition for the establishment of the drainage district was filed April 23, 1906, and, omitting signatures, is as follows:

"To the Honorable County Court of St. Louis County, Missouri:

"We, the undersigned, landowners and citizens of St. Louis county, Missouri, do hereby petition your honorable court to construct a drainage ditch, as provided in article IV, chapter 122, Revised Statutes of Missouri, 1899, to drain overflowed land, including

Boxley and Kramm lakes, and to carry the waters of
the Bonhomme creek to the Missouri River.  Said
ditch to commence on or about the land of John Bayer,
north of milepost thirty-two of the St. Louis, Kansas
City & Colorado Railroad, known as the Rock Island
System.  The ditch running east along the right of
way to the Bonhomme creek, then in a northerly di-
rection to the Missouri River.  Said proposed ditch
will be about four and one-half miles in length, and
the same will be of great public utility, and will be
conducive to the public health, convenience and wel-
fare, and it is not desired to issue bonds."

With the petition the required bond was filed, and
on May 7, 1906, the county court appointed qualified
viewers and an engineer to view the premises and re-
port as the statute requires.

Their report, filed June 18, 1906, was, caption and
signatures omitted, as follows:

"To the Honorable County Court of St. Louis
County, Missouri:

"We, the undersigned, resident freeholders of said
county, who were heretofore, on the 7th day of May,
1906, by order of this honorable court, appointed view-
ers to view the line of the proposed drainage ditch,
respectfully report that before entering upon their
duties as such viewers, they did take and subscribe an
oath before the clerk of this court, as required by sec-
tion 8280, R. S. of Missouri, 1899.  That thereupon,
under the directions of the said order of this court,
certified by the clerk, they did on May 22, 1906, view
the line of the proposed ditch as set forth in the peti-
tion herein, and report that by actual view of the
premises along and adjacent thereto that the proposed
improvement is necessary and practicable, and will be
conducive to public health, convenience and welfare,
and that the best route of the proposed ditch is as fol-
lows:

254 Mo. 21

"Beginning at a point in the land of John Bayer, northwest of milepost 32 of the Rock Island Railroad Company, thence running east and nearly parallel with said railroad, at an average distance of 200 feet from said railroad, through land of said Bayer, William Rickard, Mary D. Ficke, Lawrence Fick, Fred J. Broemmelsick, Georgia A. Stevens, Robert G. Coleman, P. A. Fick, Charlotte Fick, Mary Schaeffer, Chas. L. Boisselier, Alvina and Edgar Kessler, Leo Steiner, Jr., Wm. J. Kroenung, Otto Hohman, Louis Hartung, Damian Kroenung, Frederick Kroenung, across the Kehr's Mill road, Daniel Kroenung, to Bonhomme creek, thence in a northerly direction across land of Daniel Kroenung, Henry Blank, across Olive road, and Harry Ficke, Adam Steffan and Peter Steffan to the Missouri River.

"That the route of said proposed ditch will more fully appear from the plat hereto attached and made part of this report, upon which plat said proposed ditch is indicated by a red line.

"Your commissioners further report that such portion of said ditch should be covered where it crosses said roads, and the work of constructing the same should be let by contract without allotment."

The plat alluded to was filed and is in the record here.

Upon the filing of this report, the county court fixed September 21, 1906, as the date for hearing the petition and report, and ordered the county clerk to publish a notice of the pendency of the said petition, the appointment and report of said viewers, the place of beginning, route and termination of said ditch or drain in the time and manner the statute prescribed. The notice published pursuant to this order was as follows:

"Notice is hereby given that there is pending in the county court of St. Louis county, Missouri, a petition signed by D. C. Kroenung, John Bayer, Wm. J.

Kroenung, Walter S. Ficke, Lawrence Fick, and J. F. Brommelsick, to construct a drainage ditch, to drain certain overflowed lands, under chapter 122, article 4, of the Revised Statutes of Missouri, and amendments thereto, said ditch to commence on or about the land of John Bayer, north of milepost 32 of the St. Louis, Kansas City & Colorado Railroad Company, now known as the Rock Island System, the ditch running east along the right of way of the said railroad company, to the Bonhomme creek, thence in a northern direction to the Missouri River, the terminus thereof.

"That said petition was filed April 23, 1906, and that Henry Heinemann, Charles Wardenberg and J. J. Collins were appointed viewers and Wm. Elbring, a competent civil engineer, was appointed to assist said viewers, which said appointments were made on the 7th day of May, 1906, and that said viewers did, on the 18th day of June, 1906, file with the clerk of the county court their report, wherein they find that said ditch is necessary, practicable and would be of great public utility and would be conducive to the public health, convenience and welfare; also reporting therein the best route for the proposed drain, that the portion crossing the public roads should be covered and that the work of constructing the same should be let by contract without allotment, and said report is now pending in the county court.

"Notice is further given that the said county court did, on Monday, the 27th day of August, 1906, by an order of record, fix Friday, September 21, 1906, at 10 o'clock a. m. in the county court room, as the time for the hearing of the petition and the report of said viewers.

"In testimony whereof, I have hereunto set my hand and affixed the seal of said court, at office in Clayton, this, the 28th day of August, 1906.

"(SEAL)          JOHN RUHL,
               Clerk County Court."

On September 21, 1906, the county court entered an order in which, among other things, it found in favor of the proposed improvement and established Drainage District No. One, describing the ditch as described in the report of the viewers and engineer.

It will be observed that the original petition filed in the county court described the proposed ditch or drain as commencing ''on or about the land of John Bayer, north of milepost 32 of the St. L., K. C. & C. R. R.; the ditch running east along the right of way to the Bonhomme creek, then in a northerly direction to the Missouri River,'' while the report of the viewers and engineer appointed to determine, among other things, from actual view, ''the best route for the proposed drain,'' reported that such best route was ''as follows: Beginning at a point in the land of John Bayer, northwest of milepost 32 of the Rock Island Railroad Company, thence running east and nearly parallel with said railroad, at an average distance of 200 feet from said railroad through the land of said Bayer'' (and nineteen other named persons) ''to Bonhomme creek, thence in a northerly direction across the land of'' (five named persons) ''to the Missouri River.'' This report referred to a plat, filed with and made a part of it, ''upon which plat said proposed ditch is indicated by a red line.''

It will also be observed that the notice published made no pretense of describing the proposed ditch as it was described in the report of the viewers, and failed to refer to the plat filed with that report. The description in the notice of the beginning point, route and terminus of the ditch is simply that given in the petition.

Notice of Viewers' Report.

Under the statute in force in 1906 (Laws 1905, p. 180 et seq.), after the report of the first viewers was filed, notice was required to be given (Laws 1905, p. 181, sec. 8281) ''of the pendency of said petition, the appointment *and report of said viewers,* the place of

beginning, route and terminus of said proposed ditch or drain, and the time fixed" for hearing the petition and report..

Under the statute in force (Sec. 8281, R. S. 1899) prior to the amendment of 1905, the notice of the pen-dency of the petition and appointment of viewers and the time when the viewers would make their report was required to be given in advance of that report. Notice of the report itself was not possible since the notice was given in advance of the filing of the report. Under the Act of 1905, however, the report of the viewers was required to be filed before the notice was given and notice *of the report* was required, as well as of the pendency of the petition and the time of the hearing. Under both statutes it was necessary to give notice of the place of beginning, route and terminus of the ditch or drain.

Under the statute of 1899 the only information the court had of the beginning, route and terminus of the ditch was that given in the petition filed and that was sufficient if generally descriptive thereof, and, consequently, a like approximation in the notice was sufficient compliance with the statute. [State ex rel. v. Taylor, 224 Mo. 1. c. 462.]

The reason for the amendment in 1905 of the section affecting this question is clear enough. The Legislature intended that those interested should have notice of the report itself after it was filed and before the hearing. The report, in the nature of the thing, usually would be more definite and certain than the petition and of this more definite location the notice, under the amendment of 1905, would inform those con-cerned. This could be the only sound reason for de-laying the giving of notice until after the filing of the report, and requiring *notice of the report,* and is the undoubted intent of the statutory command that no-tice *of the report* should be given.

Under the Act of 1905, the hearing on the report of the viewers was of first importance. Upon that hearing the question of establishing the drainage district was to be finally determined, for the statute provided that if the court, upon that hearing, found in favor of making the improvement "the lands which, as hereinafter provided, it may be found will be thereby benefited, shall, for the purpose of this article, constitute a drainage district which shall be designated by number."

It was at this time objections to the formation of the district were required to be made, if at all, and objections following the report of the second board of viewers went only to the correctness of the estimates of cost of location and construction and of damages and benefits and the fairness of the apportionment of the latter. [Laws 1905, p. 184, sec. 8288.]

Was the notice given sufficient when examined in the light of the requirements of section 8281, as amended in 1905?

The plat filed by the viewers was, in legal effect, a part of the report they made. The statute did not require a plat to be filed, it is true, but it did require the viewers to report "the best route for the proposed drain," and the viewers might report this wholly in words and figures, or they might, as they did, report it in words and figures and plats. The statute required them to locate what was, in their opinion, the best route, and was not greatly concerned with the form their report might take. The report, in this case, definitely located the route the viewers deemed the best.

The original petition filed in the county court locates the route of the proposed ditch "along the right of way of" a named railroad. A fair interpretation of this quoted phrase is that it means the ditch was to be located adjacent to the right of way mentioned. If it did not mean this but meant only that the proposed ditch was to begin at some point on John Bayer's

land and then run *parallel* to the right of way, then the beginning point might vary 3600 feet from north to south, that being about the distance Bayer's land runs north from the right of way. But the words should be taken in their ordinary meaning. So taken, the description in the petition was of a ditch running eastwardly and adjacent to the right of way. This construction of the phrase fixes the point of beginning at a point immediately north of the right of way and north of milepost thirty-two. The petition, thus understood, located the beginning point and the ditch itself, through its easterly course, quite definitely.

The report of the first board of viewers (including the plat made a part of that report) located the beginning point of the ditch northwest of milepost 32 a short distance from the north line of the right of way, and gave its first course as east and nearly parallel with the right of way, *at an average distance of* 200 *feet from the north line thereof,* the plat showing the exact location.

There was a material difference between these two descriptions. Several small tracts north of the railroad which would have been little affected by a ditch along and adjacent to the right of way were cut about in half by the ditch proposed in the viewers' report and parcels were shorn from every tract adjoining the right of way.

The discrepancy between the route described in the petition and in the published notice and that described in the report of the viewers was material. Landowners might have had no objection to an open ditch lying adjacent to the railroad right of way but might well have objected to one cutting their lands in half or cutting considerable parcels therefrom and leaving the severed portion lying between the ditch and right of way.

The very reason for the amendment of section 8281 in 1905 was to provide that notice of the viewers'

report should be given.  Landowners likely to be affected had a right to rely upon that notice as showing the route recommended by the viewers and engineer. The only description in the notice was of a ditch along a route materially different from that recommended by the viewers, and the notice was, consequently, calculated to conceal the recommended route rather than to advise landowners of it.  It will not do to say that "notice of the report," as required by the statute, meant simply notice of the fact a report had been made.  The statute requires "notice of the pendency of said petition, the appointment and *report of said viewers,* the place of beginning, route and terminus of said ditch."  The former statute (Sec. 8281, R. S. 1899) required only "notice of the pendency of said petition and the appointment of said viewers, the place of beginning," etc.  Under that statute the certainty with which the beginning, route and terminus was to be described in the notice was affected by a preceding section which made it sufficient for the petition to give a general description of them.  The petition, under the old statute, contained all the information the trial court had before it when it formulated its notice; and if the petition complied with section 8279, Revised Statutes 1899, then a notice following the petition was sufficient under section 8281, Revised Statutes 1899.

The Act of 1905, section 8281, as amended, however, required as much notice of the report as the former statute required of the petition.  The route **Jurisdiction.** reported by the viewers was much more likely to be adopted than that described in the petition, if the two differed, and notice of it was, in such case, correspondingly more important.  The Act of 1905 required *notice of the report* no less certainly than section 8281, Revised Statutes 1899, required notice of the petition and as much required notice of the beginning, route and terminus of the ditch as described in the report as old section 8281 re-

quired notice of them as described in the petition. It is not conceivable that under the statute of 1899 a substantial variance, in the notice, from the description in the petition could give jurisdiction, and for like reasons, under the Act of 1905, a notice of the beginning, route and terminus of the ditch as described in the viewers' report is essential, and in the absence thereof the court acquired no jurisdiction.

*Certiorari* is the appropriate remedy.    While an appeal lies from the county court in a proceeding to establish a drainage district the statute authorizing

**Certiorari.**    it    distinctly    specified    the    questions which may be considered by the court to which the appeal is taken and thereby denies any remedy by appeal for the insufficiency of the notice the statute requires to be given, as has been expressly held.    [Tie and Timber Co. v. Drainage Dist. Co., 226 Mo. l. c. 440, 444; Drainage Dist. v. Railroad, 216 Mo. 709.]    The office of *certiorari* is to "bring the record of the proceedings of an inferior court or tribunal before a superior court to determine whether it had acted legally" (State ex rel. v. Edwards, 104 Mo. l. c. 126; State ex rel. v. Guinotte, 156 Mo. l. c. 526) and "the leading object of the writ is to keep inferior judicatories within the bounds of their jurisdiction."    [State ex rel. v. Dowling, 50 Mo. l. c. 136.]    In this case the county court was proceeding *in invitum* and not according to the course of the common law.    The "fact of notice having been given in the mode pointed out by the statute is" a jurisdictional prerequisite the absence of which *certiorari* will reach (C. R. I. & P. Ry. v. Young, 96 Mo. l. c. 42) particularly in view of the fact that the record affirmatively shows no legal notice was given.    The judgment is affirmed.    *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court.    All the judges concur.