STATE OF MISSOURI at the relation of GENERAL MOTORS ACCEPTANCE CORPORATION, a Corporation, Relator, v. DARIUS A. BROWN, Judge of the Circuit Court of Jackson County, Missouri, at Kansas City, and LOUIS FIRESTONE.—48 S. W. (2d) 857.

Court en Banc, April 12, 1932.

*Leon Greenebaum, Dwight Beals* and *L. A. Laughlin* for relator.

FRANK, J.—Original proceeding in mandamus to compel Honorable Darius A. Brown, Judge of the Circuit Court of Jackson County to set aside an order dismissing the case of General Motors Acceptance Corporation v. Louis Firestone and to reinstate said cause on the docket and proceed to hear and determine same on its merits.

The facts necessary to a disposition of the case are as follows:

General Motors Acceptance Corporation instituted a suit against Louis Firestone before one S. R. Layton, a Justice of the Peace in and for Kaw Township in Jackson County, to recover the sum of $261.78 with six per cent interest thereon from August 11, 1928, and $40 attorney fees all alleged to be due plaintiff according to the terms of a promissory note executed by said Firestone. Defendant Firestone, although duly served with process, made default and judgment was rendered against him in the sum of $301.73. In due time Firestone appealed to the the circuit court where, upon motion filed by him, said cause was dismissed on the ground that the justice court did not have jurisdiction of said cause and hence the circuit court acquired none by the appeal.

The grounds of the motion to dismiss were, in substance, (1) that the action of the county court in appointing S. R. Layton as Justice of the Peace was void, and (2) that the place where said Layton held court and rendered the judgment in question was within five miles of other justice courts in the same township, and was more than three miles from his residence and the residence of the persons who petitioned the county court for his appointment, by reason of which said Layton did not have jurisdiction of said cause.

The order of the county court appointing said Layton as Justice of the Peace was made pursuant to the provisions of what is now Section 2137, Revised Statutes 1929. The pertinent part of this section reads:

"Whenever a petition shall be presented to the county court of any county in this State, signed by twelve or more qualified voters of any township in said county, setting forth that they live more than five miles from the nearest justice of the peace in their township, the county court shall have power to appoint an additional justice of the peace for such township, and the justice so appointed shall live in the immediate neighborhood of the petitioners, and at least five miles from any other justice of the peace of such township; *Provided,* that the county court shall not appoint more than two additional justices in any township, except if it be shown to the county court that there is no justice of the peace living in any incorporated or unincorporated town or village having a population of at least two hundred inhabitants, then the county court, at the request of any twelve resident householders, in said town or village may appoint one justice in said town or village in addition to the number of justices herein specified."

■ The trial court heard evidence on the motion to dismiss and at the conclusion of the hearing dismissed said cause. The record of the county court showing Layton's appointment, commission and qualification was introduced in evidence. The record showing the appointment of two other justices for Kaw Township was also introduced, evidently for the purpose of showing that the county court by the appointment of these two justices exhausted its statutory authority to appoint additional justices for Kaw Township and for that reason had no authority to appoint Layton, because the statute authorizes the appointment of only two additional justices for such township. This was an attempt to collaterally attack the judgment of the county court appointing Layton, which is not permissible. We had this very question before us in the recent case of State ex inf. Gentry, Attorney-General, v. Toliver, 287 S. W. 312, 314 Mo. 737. That was an original proceeding by *quo warranto* to test the right of Toliver to hold the office of justice of the peace of Kaw Township, Jackson County. We held in that case that the act of making the appointment of Toliver involved the finding by the county court that such a state of facts existed as to authorize it to appoint an additional justice of the peace, including the finding that two additional justices had not already been appointed, or if they had previously been appointed, that both were not qualified and acting at the time, and that such finding had the force and effect of a judgment and could not be attacked even by *quo warranto* in the absence of a showing of fraud in its procurement.

It is our conclusion that the judgment of the county court appointing Layton as justice of the peace imports verity and cannot be questioned except in a direct proceeding brought for that purpose

and upon grounds which, if established, the law would recognize as sufficient to set aside the judgment of appointment.

At the hearing on the motion to dismiss evidence was also introduced tending to show that Layton did not live in the immediate neighborhood of the persons petitioning the county court for the appointment of an additional justice, and that the place where he holds his court and rendered the judgment in question was within five miles of other justice courts in said township. ■ The evident purpose of introducing this character of testimony was to attack the legal existence of the justice court because it was not held at a place designated by law. The question of the legal existence of a court cannot be raised in this manner. The general rule is stated in 15 Corpus Juris, page 875, as follows:

"The legality of the existence of a *de facto* court and its right to exercise its functions cannot be inquired into collaterally, but only in a direct proceeding at the instance of the State. *Neither can the question of the legal existence of a trial court be raised by appeal.* (Italics ours.)

A like question was considered by the St. Louis Court of Appeals in State v. Searcy, 46 Mo. App. 421. That court said:

"We are of opinion that, from the very nature of things, the question of the legal existence of a court cannot arise upon an appeal from a judgment in a proceeding commenced in that court." Speaking to a like question in Gardner v. Gas & Electric Co., 154 Mo. App. 666, 674, 135 S. W. 1023, the Springfield Court of Appeals said:

"The first claim made by the appellant is that the cause should be transferred to the Supreme Court, on the ground that a constitutional question is presented. The so-called constitutional question relates to the existence of said Division No. 2 of said court. The question of the legal existence of the court cannot be raised on appeal in a cause instituted in such court." [See, also, State v. Rich, 20 Mo. 393; Burt v. Winona & St. Paul Railroad Co., 31 Minn. 472, 18 N. W. 285; State ex rel. Bales v. Bailey, 106 Minn. 138, 118 N. W. 676; Jenkins v. State, 93 Ga. 1, 18 S. E. 992; State v. John Harris, 47 La. Ann. 386, 17 So. 129.]

■ It is our judgment that neither the validity of the appointment of Layton as justice of the peace, nor the legal existence of the court over which he presides can be questioned on the appeal of a case instituted and determined in his court. Having reached the conclusion that the cause should not have been dismissed, the next question is whether relator's remedy to obtain a reinstatement of the case is by writ of mandamus or whether or not he had an adequate remedy by appeal or writ of error. ■ It is settled law that where the question of jurisdiction is to be determined from contro-

verted facts in the case, rather than the law, and that question is determined against the plaintiff, appeal or writ of error and not mandamus is the remedy.

On the other hand, it is equally well settled that where an inferior court declines to hear a case on the ground that it does not have jurisdiction, and the question of jurisdiction is purely a matter of law, a mandamus will go if the inferior court has misconstrued the law. [State ex rel. McGrath Pump Works v. Homer, 249 Mo. 58, 155 S. W. 405; State ex rel. Fleming v. Shackelford, 263 Mo. 52. 172 S. W. 909; State ex rel. Foraker v. Hoffman, 309 Mo. 625, 274 S. W. 362; State ex rel. Kaiser v. Miller, 316 Mo. 372, 289 S. W. 898.]

There is no question but what the subject-matter of the suit was within the jurisdiction of a justice of the peace. Neither is there any claim that the defendant in that action was not duly served with process. The sole contention is that the evidence heard on the motion warranted the court in dismissing the cause for want of jurisdiction on the ground (1) that Layton's appointment as justice of the peace was illegal, and (2) that he held his court at a place not authorized by law. From this contention it is argued that the court's act in determining the question of jurisdiction from the evidence introduced on the motion to dismiss the cause, was judicial and not ministerial and for that reason a writ of mandamus should not go because appeal or writ of error is not only the proper but also a complete and adequate remedy for the correction of an erroneous determination of a judicial question. The trouble with this contention is that for reasons heretofore stated which we need not repeat here, neither that validity of Layton's appointment as justice of the peace, nor the legality of the location of his court can be questioned on the appeal of a case instituted and determined in his court. This being true, it must follow that the jurisdiction of the circuit court did not depend upon the determination of facts which that court had no lawful right to consider or determine. When the case reached the circuit court on appeal, it was the duty of that court to treat the case as coming from a legally constituted justice of the peace court—not because it was in fact a legally constituted court, but because the circuit court had no authority to question its legal existence in a collateral proceedings.

It is conceded that the suit brought in the justice court was one to recover the sum of $301.73, the amount claimed to be due on a promissory note executed by the defendant. It is also conceded that defendant was duly served with process. The service of process upon defendant being admitted, the only remaining question is whether or not the law gives a justice of the peace in Kaw Town-

ship, Jackson County, jurisdiction of a suit to recover the sum of $301.73 due on a promissory note, and of this there is no doubt ▮ Relators do not claim otherwise. Where, as in this case, the question of jurisdiction is purely one of law, and the court misconstrues that law and dismisses the case for want of jurisdiction, a writ of mandamus will go to compel reinstatement of the case. On the other hand, if the question of jurisdiction depended upon facts, a different question would be presented. In State ex rel. Fleming v. Shackelford, 263 Mo. 52, 61-2, 172 S. W. 347, we said:

"If the lower court, upon a preliminary question of jurisdiction, which question of jurisdiction is to be determined from the law of the case, rather than the facts, resolves the question of jurisdiction against the applicant or plaintiff, and for that reason declines to consider the merits of the case, then mandamus will lie to compel such court to proceed, upon the merits, if we, under the law determine that such court possessed the jurisdiction. Of course if jurisdiction is dependent upon facts, then we have a different proposition."

It is next contended that our Rule 32 should have prevented the issue of a writ of mandamus in this case. That rule reads as follows:

"No original remedial writ, except *habeas corpus*, will be issued by this court in any case wherein adequate relief can be afforded by an appeal or writ of error, or by application for such writ to a court having in that behalf concurrent jurisdiction."

▮ It is true that where an inferior court dismisses a cause because of alleged lack of jurisdiction, the party aggrieved has a remedy by appeal or writ of error, but the question is whether or not such remedy would furnish adequate relief. Litigants are entitled to a speedy determination of their cause on its merits, consistent of course with justice and orderly administration of the business of the court. Where as here, a litigant has been denied a hearing of his cause on the merits, because of a misconstruction of law, neither the law nor Rule 32 compels him to seek relief by appeal when a speedy and more adequate remedy is open to him by writ of mandamus. Speaking to this question in State ex rel. v. Homer, 249 Mo. 58, 73, 74, 155 S. W. 405, this court en banc said:

" 'Nor would an appeal or writ of error afford any substantial or effectual remedy in a case of this sort. Were an appeal taken in an instance like the present, there would be nothing to pass upon, no errors to correct; for no trial had occurred. It is not the intention of the law to permit a cause to be bandied about like a shuttlecock from court to court without affording a more effective and prompt relief than would be afforded by an appeal or writ of error.' "

Further contention is made that the alternative writ should be quashed because it was issued in violation of our Rule 32 which provides that no original remedial writ, except *habeas corpus* will be issued by this court in any case where adequate relief could be afforded by application for such writ to a court having concurrent jurisdiction.

It is true that application for this writ could have been made to the Kansas City Court of Appeals. However, respondents had notice of the application to this court for the writ, and the time for them to have made the objection which they are now making was before the alternative writ was issued. This, they failed to do. [State ex rel. Latshaw v. Orr, 291 Mo. l. c. 600, 237 S. W. 770, 772.] Besides, where the alternative writ is once issued, it has been the rule of this court to follow the case to end, especially so where the facts warrant judicial interference. [State ex rel. Nolen v. Nelson, 310 Mo. 526, 275 S. W. 927, 928; State ex rel. Duraflor v. Pearcy, 325 Mo. 335, 29 S. W. (2d) 83.]

The final contention is that relator's petition does not plead that relator will suffer any harm or damage or be deprived of securing full and adequate relief by appeal or writ of error if the writ of mandamus is denied.

As a matter of law, relator was entitled to a hearing of its case on the merits. The petition and the writ both allege the facts attending the wrongful dismissal of its case and the consequent denial of its right to have the case heard on the merits. The harm resulting to relator from the wrongful act of respondents was the denial of its right to have the case heard on the merits. The writ alleges that relator was denied that right, therefore the criticism leveled against it is not well founded. Relator says that if the writ is defective in the respects mentioned, the right to amend exists and the writ should not be quashed but leave to amend should be granted. We do not think the writ is defective, but if it is, relator would have the right to amend it. [State ex inf. v. Gas Company, 254 Mo. 515, 529, 530, 163 S. W. 854; State ex rel. v. Hudson, 226 Mo. 239, 264, 126 S. W. 733.] This being true, the writ, if defective in the respect mentioned, should be treated as amended.

In awarding a peremptory writ we are not holding that S. R. Layton's appointment as justice of the peace of Kaw Township is valid, or that the court over which he presides has any legal existence. What we do hold concerning these questions is that they cannot be determined in this case.

For the reasons stated, the alternative writ heretofore issued should be made peremptory. It is so ordered. All concur.