STATE OF MISSOURI at the Relation of AQUAMSI LAND COMPANY, Relator, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals, and FIRST NATIONAL BANK OF CAPE GIRARDEAU.—79 S. W. (2d) 463.

Court en Banc, February 7, 1935.

392

*Giboney Houck* and *Brandom Hope* for relator.

*Benson C. Hardesty* and *Rush H. Limbaugh* for respondents.

*Oliver & Oliver, Finch & Finch, Knehans & Knehans* and ***Dearmont, Sprädling & Dalton, amici curiae.***

*Charles E. Rendlen, Ben E. Hulse, Ezra T. Fuller, Harry Carstarphen, Ben Ely, Jr.,* and *Robert L. Jackson, amici curiae.*

ATWOOD, J.—This is an original proceeding by certiorari to quash the record and judgment of the St. Louis Court of Appeals in the case of First National Bank of Cape Girardeau v. Aquamsi Land Company reported in 70 S. W. (2d) '90.

It is alleged in relator's petition that the bank sued the land company in the Cape Girardeau Court of Common Pleas on four special tax bills; that the land company appealed from an adverse judgment therein to the St. Louis Court of Appeals where the judgment was affirmed; and that the appellate court was without jurisdiction to affirm the judgment because: (1) the Cape Girardeau Court of Common Pleas did not have on January 29, 1932, the date of said judgment, any legal existence under the laws and Constitution of Mis-

souri; and (2) even if the common pleas court had been in existence at the time said judgment was rendered such judgment was void because it was not rendered by the then duly elected, qualified and acting judge of the Twenty-eighth Judicial Circuit of Missouri, who was the only one authorized to preside over the Cape Girardeau Court of Common Pleas.

By way of return to our writ respondents, through the clerk of the St. Louis Court of Appeals, transmitted to this court what purports to be a full, true and complete transcript of the record and proceedings in the cause of First National Bank of Cape Girardeau against Aquamsi Land Company as fully as the same was on file and of record in the office of said clerk. From this return it appears that judgments were rendered as alleged in relator's petition, and that after appellant's motion for a rehearing was overruled but at the same term appellant filed in said Court of Appeals a motion to set aside its judgment of affirmance, stay mandate and dismiss the case for want of jurisdiction on the grounds above stated and alleged in relator's petition, which motion was never ruled by that court.

In their printed statement of the case counsel for respondents suggest that when defendant's appeal in First National Bank of Cape Girardeau against Aquamsi Land Company was lodged in the St. Louis Court of Appeals the appellant sought to raise a constitutional question and that the case was thereupon transferred to the Supreme Court where it was "adjudged that no constitutional question was involved and that jurisdiction to try the case was properly lodged in the said Court of Appeals and accordingly transferred the case back to said Court of Appeals." From this postulate counsel would have us infer that the question of the jurisdiction of the St. Louis Court of Appeals to affirm the judgment is now *res judicata.* The mandate of the Supreme Court in this matter, as disclosed by the record before us, recites that "it appearing to the satisfaction of the Court that this Court is without jurisdiction to hear and determine this appeal, the Court doth order that said cause be and the same is hereby transferred to the St. Louis Court of Appeals." It thus appears that the Supreme Court merely passed on its own jurisdiction to entertain the appeal, the only question there raised being whether or not a constitutional question was in the case. Even if it had undertaken to adjudicate the jurisdiction of the St. Louis Court of Appeals, under the circumstances disclosed by the record such ruling would not have been *res judicata.* [State ex rel. Otto v. Hyde, 296 S. W. 775, 317 Mo. 714, 718.] So the action heretofore taken by the Supreme Court is not a bar to this proceeding.

Relator's theory of the nonexistence of the court of common pleas at the time it rendered the judgment in question, which is the

first alleged ground of invalidity, is thus succinctly set forth in relator's petition:

"Prior to 1924 the Cape Girardeau Court of Common Pleas was provided for and was vested with judicial power by Section 5 of the old schedule of the Constitution, but in 1924 a new schedule to our State Constitution was adopted and the old schedule, including Section 5 of the old schedule, was repealed. The Cape Girardeau Court of Common Pleas ceased to exist and was abolished by the repeal in 1924 of said Section 5 of the old schedule."

It is apparent from the record before us that the judgment appealed from was rendered in the court of common pleas after the constitutional amendment entitled "Schedule" was adopted in 1924 and that the judgment was affirmed on appeal. An appellate court has no greater jurisdiction than that possessed by the trial court. [State ex rel. Baker v. Bird, 253 Mo. 569, 581, 162 S. W. 119.] As said by the court in Chambers v. Hodges, 23 Tex. 104, 110: "The judgment of affirmance rendered by this court, could not impart to it validity, but would itself be void by reason of the nullity of the judgment appealed from." [Also, see Wilson v. Montgomery, 14 Sm. & M. 205, 207; Vanfleet's Collateral Attack on Judicial Proceedings, sec. 16, p. 14.] Certiorari is a direct attack upon the judgment of the court to which it is directed, in this case the judgment of the St. Louis Court of Appeals. [Vanfleet's Collateral Attack on Judicial Proceedings, sec. 2, p. 4; Freeman on Judgments (5 Ed.), sec. 307, p. 612.] That judgment is void if the judgment below was void. If the judgment is really void any kind of proceeding to cancel it would be proper and might be successfully pursued unless relator is estopped by its former conduct (Vanfleet's Collateral Attack on Judicial Proceedings, sec. 6, p. 8, sec. 860, p. 927), and there is no claim of estoppel in this case. In certiorari, trial is had upon the return and is limited to an inspection of the record only. [Ferris on Extraordinary Legal Remedies, sec. 184, p. 211; State ex rel. Teasdale v. Smith, 101 Mo. 174, 14 S. W. 108.] It is the proper remedy to confine an appellate court within the limits of its constitutional and legal authority. [Secs. 3 and 12, Art. VI of the Constitution of Missouri; State ex rel. Ruppel v. Wiethaupt, 254 Mo. 319, 329, 162 S. W. 163; State ex rel. Gilman v. Robertson, 264 Mo. 661, 678, 679, 175 S. W. 610, separate concurring opinion of GRAVES, J., concurred in by a majority of the Court in Banc; State ex rel. Delano v. Ellison (Mo.), 181 S. W. 78, 80, 81; State ex rel. Long v. Ellison, 272 Mo. 571, 579, 199 S. W. 984; 4 Encyc. of Pleading and Practice, p. 222.] So much for the appropriateness of the remedy.

In answer to the pleaded matter last above quoted respondents say that prior to adoption of the new schedule in 1924 the Cape Girardeau Court of Common Pleas was provided for and was vested

with judicial power by the Constitution and statutes of this State and even if as relator claims it was abolished in 1924 it was, nevertheless, at least a *de facto* court when it thereafter rendered the judgment here in question, and being such its judgment was not void. [33 C. J., sec. 28, p. 1070; 15 C. J., pp. 474-475; Kayser v. Trustees of Bremen, 16 Mo. 88; State v. Rich, 20 Mo. 393; Shewalter v. Pirner, 55 Mo. 218, 234; Bouldin v. Ewart, 63 Mo. 330, 335; The Inhabitants of Fredericktown v. Fox, 84 Mo. 59, 65; State v. Fuller, 96 Mo. 165, 167, 9 S. W. 583; State v. Wiley, 109 Mo. 439, 19 S. W. 197; State v. Searcy, 111 Mo. 236, 20 S. W. 186; State v. Watts, 111 Mo. 553, 20 S. W. 237; Ex parte Renfrow, 112 Mo. 591, 598, 20 S. W. 682; Black v. Early, 208 Mo. 281, 303, 106 S. W. 1014; State ex rel. Blair v. Center Creek Mining Co., 262 Mo. 490, 503, 171 S. W. 356; State ex rel. General Motors v. Brown, 330 Mo. 220, 226, 48 S. W. (2d) 857; State v. Searcy, 46 Mo. App. 421, 425; Gardner v. Gas & Electric Co., 154 Mo. App. 666, 674, 135 S. W. 1023; Keene v. McDonough (U. S.), 8 Pet. 308; State ex rel. Bales v. Bailey, 106 Minn. 138, 118 N. W. 676, 16 Ann. Cas. 338, 19 L. R. A. (N. S.) 775; Burt v. Railroad Co., 31 Minn. 472, 18 N. W. 285.]

In reply counsel for relator say that upon adoption of the schedule in 1924 all courts of common pleas in this State ceased to exist, that thereafter there could be no *de facto* court of common pleas because there was no such office, citing the doctrine that there can be no *de facto* officer when there is no *de jure* office and concluding therefrom that the judgment rendered by the court of common pleas was void. [See latter part of sec. 212, p. 874, 15 C. J.; Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178, 186-187; State ex rel. Henderson v. The County Court of Boone County, 50 Mo. 317, 321; Ex parte Snyder, 64 Mo. 58, 62; Ex parte Bedard, 106 Mo. 616, 627, 17 S. W. 693; Ex parte Renfro, 112 Mo. 591, 598, 20 S. W. 682; State v. Butler, 178 Mo. 272, 337, 77 S. W. 560; State ex rel. Board of Education of St. Louis v. Nast, 209 Mo. 708, 722, 723, 108 S. W. 563; Kavanaugh v. Gordon, 244 Mo. 695, 719, 149 S. W. 587; State ex rel. Abington v. Reynolds, 280 Mo. 446, 455, 218 S. W. 334.]

Respondents rely much on the doctrine announced in State ex rel. Bales v. Bailey, supra. In note appended to report of this case in 16 Ann. Cas. 338, 341, it is said: "The holding of the reported case appears to be contrary to the decisions in all of the jurisdictions where the question has been raised whether the legal existence of a committing court can be questioned in *habeas corpus* proceedings. The distinction is generally made between the right to question the title of a person acting under color of authority as a magistrate of a court, organized and constituted under a valid statute or ordinance, and the right to question the validity of the establishment of a court, as distinguished from a magistrate of the court." An extensive case

note on *de jure* office as a condition of a *de jure* officer is appended to the report of Lang v. Bayonne in 15 L. R. A. (N. S.) 93.

On the other hand, in Norton v. Shelby County, supra, on which relator strongly relies, the court in question never had any lawful existence, whereas, it is conceded in the instant case that the trial court was a court *de jure* from the time of its creation in 1851 until the adoption of the constitutional amendment in 1924.

However the question might be decided we do not think the public interest would be well served by permitting this case, in which the existence of all courts of common pleas in this State is challenged, to ride off on the issue of whether or not the Cape Girardeau Court of Common Pleas was at least a *de facto* court when its judgment was rendered, if such can be avoided. Consequently, without ruling that question, we pass to relator's main contention which is that all constitutional authority for the existence of the Cape Girardeau Court of Common Pleas was repealed by the adoption in 1924 of Constitutional Amendment No. 21 entitled ''Schedule.''

First, as to the history and nature of the constitutional provision authorizing the existence of courts of common pleas. The State Constitutions prior to that adopted in 1875 vested ''the judicial power, as to matters of law and equity,'' in certain specified courts and ''in such inferior tribunals as the general assembly may, from time to time, establish.'' [Constitution of 1865, Sec. 1, Art. VI, and to similar effect Sec. 1, Art. V of the Constitution of 1820.] Hence, prior to 1875 the General Assembly had power to establish and did establish courts of common pleas. In this respect, however, the fundamental law was changed by the Constitution of 1875. Section 1 of Article VI of that instrument vested ''the judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided'' in certain specified courts, which specification does not include courts of common pleas. It was ''otherwise provided'' as to certain courts of common pleas by Section 5 of the Schedule, which section is as follows:

''Sec. 5. All courts of common pleas existing and organized in cities and towns having a population exceeding three thousand five hundred inhabitants, and such as by the law of their creation are presided over by a judge of a circuit court, shall continue to exist and exercise their present jurisdiction until otherwise provided by law. All other courts of common pleas shall cease to exist at the expiration of the present terms of office of the several judges thereof.''

The function of schedules appended to constitutions is thus indicated in 12 Corpus Juris, page 696, section 34d, note 35: ''Ordinances and schedules appended to a constitution, as distinguished from the permanent and fundamental law embodied in the constitution itself, are temporary enactments for the purpose of effecting

a transition from the old government to the new, and of putting the provisions of the new constitution into effect.'' Since the Constitution of 1875, apart from the schedule, vested the judicial power of the State in courts other than courts of common pleas the natural and consistent extent of the schedule in this connection would have been a provision that all existing ''courts of common pleas shall cease to exist at the expiration of the present terms of office of the several judges thereof.'' This provision, however, was limited to courts of common pleas other than certain specified classes which were continued ''until otherwise provided by law.'' Such continuance of the courts so specified necessarily implies the vesting of judicial power in them until divested by law, but this implication is at variance with ''the permanent and fundamental law embodied in the Constitution itself.'' [Sec. 1 of Art. VI, supra, which vests the judicial power of the State in courts other than courts of common pleas.] True, the general rule is that a provision in the schedule inconsistent with one embodied in the Constitution itself must yield to the latter (Sedgwick on Construction of Statutory and Constitutional Law (3 Ed.), p. 51), but no such contention is here made and we indulge the view, apparently entertained without question by the bench and bar ever since the adoption of the Constitution of 1875, that the framers thereof and the people who adopted it intended this provision of the schedule, conditionally extending the existence of certain courts of common pleas, to be read in connection with and as a part of Section 1 of Article VI vesting the judicial power of the State. Such being the intention this provision must be regarded as cumulative or auxiliary and part and parcel of the Constitution itself conditionally enlarging the scope of Section 1 of Article VI, rather than an essential part of the schedule in which it happens to appear, and continuing as such until the arrangements so made are changed by the Legislature. [Bass v. Albright (Tex. Civ. App.), 59 S. W. (2d) 891, 894, 895.]

■ Directing our attention to matters submitted to the people at the election in 1924, we find that they embraced twenty-one amendments. Of these proposed amendments the one numbered 21 was entitled Schedule. This amendment and five others were adopted and the remaining fifteen were rejected by the vote of the people at that election. While a provision found among other temporary provisions in a schedule is presumed to be temporary (State v. Taylor, 15 Ohio St. 137, cited in Sedgwick, supra, note (a), p. 51 and note (a), p. 418, in Black on Interpretation of Law (2 Ed.), note 62, p. 44, and in Endlich on Interpretation of Statute, note 65, p. 723), the provision here in question must be regarded as permanent until repealed by constitutional amendment or abrogated by statute.

It appears that none of the amendments (except Amendment No. 14 which in terms expressly and solely submitted the repeal of old Section 18, Article X, by striking it out of the Constitution of 1875) expressly purported to repeal the particular sections of the Constitution they were designed to affect. As suggested by counsel for relator, an express provision to that effect was unnecessary under the generally applicable rule thus stated in 1 Sutherland on Statutory Construction (2 Ed.), page 44: "The amendment operates to repeal all of the section amended not embraced in the amended form." The very nature of schedules, however, requires that this rule be invoked with due regard for the ends which they were severally designed to accomplish. It would be manifestly incongruous and conceivably harmful to imply the repeal of a schedule designed to put a constitution adopted as. a whole into effect from the subsequent adoption of a schedule expressly designed only to put certain amendments thereto into effect, and yet such is the logic of relator's argument. The purpose of the new schedule here in question is by its own terms thus limited and defined:

"Amendment No. 21.

"That no inconvenience may arise from the alteration and amendments in the Constitution of this State, and to carry the same into complete effect, it is hereby ordained and declared:

"Section 1. All laws in force at the time of the adoption of the amendments to the Constitution submitted to the electors at the same election at which this schedule is submitted, not inconsistent with the Constitution so amended, shall continue in force until amended or repealed;" etc.

The plain intent of the foregoing is that the provisions of this amendment should become operative only to the extent that new provisions of fundamental law submitted therewith were adopted and embodied in the Constitution itself. Nowhere in this amendment do we find an expression that any provision of the old schedule was repealed unless in conflict with the purposes and provisions stated in the new schedule, and no such conflict appears. Neither do we find therein any provision that the authorization of certain courts of common pleas appearing in Section 5 of the old schedule was repealed. As for the other twenty amendments proposed, the only one with which this authorization in Section 5 of the old schedule could have been in conflict or superfluous was proposed Amendment No. 7 relating to the judicial department, and this amendment was defeated. No new fundamental law affecting the prior existing constitutional authorization of the class of common pleas courts within which the Cape Girardeau Court of Common Pleas falls having been embodied in the Constitution itself, and the entire subject having been omitted in Amendment No. 21, it would seem that this provision of the old

schedule is not within the scope of the new schedule and was not affected thereby. Repeals by implication are not favored (Cooley's Constitutional Limitations (8 Ed.), p. 316; Black on Interpretation of Laws (2 Ed.), sec. 107, p. 351; 12 C. J., p. 710, note 54; Endlich on Interpretation of Statutes, sec. 210, p. 280). At page 281 in the authority last cited it is said: "A rule founded in reason as well as in abundant authority, that, in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal, construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject." The same authority at page 731, holds that the same presumption against unnecessary change of law exists in the construction of a constitutional provision. [Also, see Tackett v. Vogler, 85 Mo. 480, 483.]

Counsel for relator insist that an intention to repeal the old schedule *in toto* by adoption of the new is evidenced by the Journal of the Proceedings of the Constitutional Convention of 1922-23 and the following part of the official ballot used in submitting Amendment Number 12 at the election on February 26, 1924:

| SCHEDULE | |
| --- | --- |
| Amendment No. 21 | YES |
| To substitute a revised and amended Schedule for the Schedule of the present Constitution:—Makes provision for carrying proposed amendments into effect, if adopted, and for continuing in force existing laws pending the changes. | NO |

In his work on Constitutional Limitations (8 Ed.), page 124, Judge Cooley said: "The object of construction, as applied to a written constitution, is *to give effect to the intent of the people in adopting it.*" Touching resort to proceedings of a constitutional convention he said (pp. 142, 143): "When the inquiry is directed to ascertain-

ing the mischief designed to be remedied, or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. . . . And even if we were certain we had attained to the meaning of the convention, it is by no means to be allowed a controlling force, especially if that meaning appears not to be the one which the words would most naturally and obviously convey. For as the constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, . . . These proceedings therefore are less conclusive of the proper construction of the instrument than are legislative proceedings of the proper construction of a statute; since in the latter case it is the intent of the Legislature we seek, while in the former we are endeavoring to arrive at the intent of the people through the discussions and deliberations of their representatives." [See, also, 12 C. J., sec. 43, pp. 700, 701.]

The propriety of such reference to the debates in a constitutional convention is thus discussed in Endlich on the Interpretation of Statutes, section 510, pages 718, 719: "It will be observed that such a reference is not strictly analogous to a reference to the journals of the Legislature, showing the various steps in the passage of a statute; but rather to a reference to the expression of opinions by individual legislators upon the signification of its enactments—a mode of construction, which, as to statutes, has been uniformly rejected as intolerable; or perhaps, as, in the adoption of a constitution, the people at large must be regarded as the legislators, the relation of the convention preparing it for submission may be still more properly compared to that of a special committee of the Legislature charged with the drafting of a statute for its acceptance or rejection, and it would never be deemed legitimate to recur to the debates in the committee room as a source of the interpretation of a statute. Yet, this great stretch of principle seems, upon the whole, to be sanctioned by judicial authority, in the interpretation of constitutional provisions, the theory being, that, members of the convention having declared that a certain provision was designed to have a certain effect, and no member expressing a different view, the people voted for the constitution in the light of this construction, and therefore adopted it; and the limit of the applicability of the rule being 'that the debates are not to be resorted to when there is no room for construction; but where the meaning, from any cause, is in doubt, the debates may be considered; and that even the ascertained understanding of the convention is not to be permitted to override the more natural and obvious meaning of the words, in which the people adopting the constitution must be supposed to have understood them.' '' [See, also, 12 C. J., sec. 64, pp. 711, 712.] As to titles or captions of articles of

a constitution, the same authority, Endlich, says, page 721: "It is said that scarcely any significance can be attached to the wording of the captions or titles of the several articles of a constitution. 'At most, they do not profess to indicate more than the general character of the articles to which they are prefixed. That they are intended as critical and precise definitions of the subject matter of the articles, or as exercising restraining limitations upon the clear expressions therein contained, cannot be pretended.' "

Black in his work on Interpretation of Laws (2 Ed.), page 17, quoting Judge COOLEY, says: "Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every man, learned or unlearned, may be able to trace the leading principles of government." As to debates and proceedings of a constitutional convention, the same authority says, page 39: "In order to arrive at the reason and purpose of the constitution, it is also permissible to consult the debates and proceedings of the constitutional convention which framed the constitution. But it must be remembered that these are never of binding force, or of anything more than persuasive value. They may throw a useful light upon the purpose sought to be accomplished or upon the meaning attached to the words employed, or they may not. The courts are at liberty to avail themselves of any light derivable from such sources, but are not bound to adopt it as the sole ground of their decision." On the weight to be given titles or caption, the same writer at page 35, quotes Endlich, supra, with approval.

In view of the fact, above noted, that the subject of courts of common pleas is entirely omitted in the body of Constitutional Amendment No. 21 entitled "Schedule" it would seem that resort to convention debates or to the title or caption of the amendment is entirely uncalled for to determine the scope, meaning and effect of the amendment. Relator's resort to these debates, however, does not indicate the slightest reference to this subject in connection with the presentation to and adoption by the convention of this schedule. True, in the course of the presentation of this schedule and the ensuing debates it is sometimes referred to as a "substitute" for the old schedule, but a holding by us that the framers thereof intended thus *sub silentio* to repeal the constitutional authority for the existence of courts of common pleas would carry with it the unwarranted imputation of trickery on their part and also be at variance with above-stated rules of constitutional interpretation. As for the above-noted title or caption of this amendment appearing on the official ballot, while the first clause thereof states generally that the purpose of the amendment is "To substitute a revised and amended Schedule for the Schedule of the present Constitution," the clause immediately follow-

ing specifically states that it "Makes provision for carrying proposed amendments into effect, if adopted, and for continuing in force existing laws pending the change." We think no reasonable conclusion can be reached but that the latter clause is controlling and expressive of the understanding of the people who ratified the amendment. It follows from what has been said that the ratification of Constitutional Amendment No. 21 entitled "Schedule" did not work a repeal of Section 5 of the old schedule of the Constitution relating to courts of common pleas.

For support of its above-noted second and final contention relator relies upon Section 1941, Revised Statutes 1929, providing that: "All courts of common pleas existing and organized in cities and towns in this State having a population exceeding three thousand five hundred inhabitants shall be presided over by the judges of the circuit courts in which such courts are situated," etc. This statute was enacted in 1879 (Laws 1879, pp. 86, 87) and must be construed *in pari materia* with an act subsequently enacted in 1883 (Laws 1883, p. 72) now Sections 14503 and 14504, Revised Statutes 1929, which contained a provision that: "All acts and parts of acts inconsistent with this act are hereby repealed." The latter act created the office of judge of the Cape Girardeau Court of Common Pleas, and this enactment does not appear to be violative of the constitutional provisions against special and local laws. Hence, this alleged ground of invalidity of the judgment is also overruled.

For the reasons above stated our writ of certiorari heretofore issued herein is quashed. All concur.